Argued July 6, reversed and dismissed July 20, 1920.

## ROCKHILL *v.* BENSON.

(191 Pac. 497.)

**Statutes—Acts Relating to State Highway Commission not Special Laws.**

1. Laws of 1917, page 447, and Laws of 1919, page 241, creating a highway commission, and empowering it to create a new road as the Pacific Highway, despite the existence of a county road and highway in the same territory and roughly in the same route, *held* not special and local, in conflict with Article IV, Section 23, of the Constitution, providing that the legislature shall not pass special or local laws for opening highways.

**Highways—Statutes Creating State Commission Empowered it to Open New Roads.**

2. Laws of 1917, page 447, Article II, Sections 3, 5–7, 9, 10, and Laws of 1919, page 241, supplementing it, empowered the state commission to lay out and create new roads as part of the state highways, whenever necessary to secure a good alignment or the best possible grade.

**Statutes—Construed by Four Corners to Effectuate Intent.**

3. A statute doubtful in meaning must be construed by its four corners, and so as to carry out the obvious intent of the legislature.

**Highways—Map Approved by State Commission did not Adopt Particular Road.**

4. Map of highways of the state, prepared by engineer and approved conditionally by the highway commission, *held* not to have

adopted a road passing by the town of Riddle as the Pacific High-
way.

**Highways—Agreement Between Court and Member of State Com-
mission not Binding on Commission.**

5. An agreement between the County Court and a member of
the state highway commission as to the location of a highway, not
being with the commission, but with the member alone, was not
binding on the commission, whether by estoppel or otherwise.

**Counties—State Commission's Proceeding to Grade Highways can-
not be Enjoined for Failure to Obtain Rights of Way.**

6. Proceeding of state highway commission to grade a highway
cannot be enjoined by a taxpayer of the county on account of the
failure of the commission to obtain some of the rights of way be-
fore the grading contract was let; the provision of Laws of 1917,
page 447, that right of way shall be acquired before any contract
shall be let, not being mandatory or prohibitory, so that a tax-
payer can take advantage of it.

[As to right of individual to enjoin act of public officials,
see notes in 3 Ann. Cas. 1013; 15 Ann. Cas. 1173.]

**Highways—Choice of Route Discretionary With Commission.**

7. Where the route for a state highway adopted by the high-
way commission would be shorter than those afforded it by the ex-
isting county roads, and the maximum elevation would be consid-
erably less, there was room for exercise of discretion by the com-
mission in adopting such route, and its judgment was conclusive.

**Evidence—Presumption That Conclusion of Commission as to Loca-
tion of Way was Honestly Applied.**

8. In the absence of evidence to the contrary, the Supreme
Court must assume that the conclusion of the highway commission
as to the route for a highway was honestly and conscientiously
applied to the facts in the case.

From Douglas: GEORGE F. SKIPWORTH, Judge.

In Banc.

Plaintiff, a taxpayer in Douglas County, brings this
suit against the state highway commission, H. J.
Hildeburn, a contractor, and other nominal defend-
ants, to enjoin the location of the Pacific Highway as
the commission is attempting to construct the same
from Myrtle Creek, in said Douglas County, south
toward Canyonville. It seems that, prior to the
creation of the highway commission, there were two
public roads leading from Myrtle Creek to Canyon-

97 Or.—12

ville, both of which had been in existence as public highways for some considerable length of time. Both of these roads follow the general course of the valley of the South Umpqua River. One of them, however, diverged from the other and crossed the river a few miles south of Myrtle Creek, and continued on the west side of the river, through Riddle and across Cow Creek, to Canyonville. The other road kept to the east side of the river until about opposite Canyonville, and then crossed to that place. The latter road was known as the "old stage road."

The Pacific Highway, as the highway commission is now attempting to construct the same, does not exactly follow either of these roads, but keeps along the old stage road, or near its general course, after leaving the point of divergence between the two old roads, and finally leaves that road and crosses the Umpqua River to the west side, some three or four miles nearer to Canyonville, and then continues up to that place on the west side of the river. This new route is generally known as the "cutoff," and is something over two miles shorter than the route by way of Riddle. It also seems from the evidence to have considerably less elevation to overcome and to have fewer "ups and downs." It is claimed on behalf of the Highway Commission that it is shorter and considerably cheaper in its ultimate construction and completion as a paved road, and that it has a better grade. On the other hand, it is claimed on behalf of the plaintiff that the Riddle road will cost less to grade, will save the expense of building one new bridge, and will accommodate a greater number of local people.

The original highway commission was created by the legislature in 1913. It appears from the evidence that shortly thereafter a truck, loaded with highway

signs, went through Douglas County and placed some of these signs at different points along the road passing through Riddle, and thereafter the road through Riddle seems to have been known, locally at least, as the "Pacific Highway." There is no competent evidence, however, as to under what authority the persons putting up the signs and locating them acted, or that the placing of the signs was authorized by the commission. It is conceded in the brief of respondent that there was no other official action designating the Pacific Highway through Douglas County, by the old original highway commission.

In 1917 the legislature (Chapter 237) repealed the act of 1913 (Chapter 339) and created a new commission. Afterwards the highway engineer prepared a rough general map of the highways of the state and their locations. This map showed the Pacific Highway as running through Riddle. Afterwards this map was approved by the highway commission as a general map, with certain reservations. The resolution approving the same was as follows:

"A map showing the state highways, together with descriptions showing their terminal points and important places touched along the line, was presented to the Commission for approval. After some suggested changes the map was approved as outlined; it being understood, however, that the definite selection of a number of highways shown on the map will not be determined upon until after location surveys have been completed."

Prior to this time, and in the year 1915, the highway engineer under the old commission had made two surveys of this part of the route; one running along the cutoff" line, and the other along the road running through Riddle. These surveys were known as the "Peters surveys." Finally in 1919, the commis-

sion definitely adopted the "cutoff" route, leaving Riddle to one side, and proceeded to let a contract to the defendant Hildeburn for the grading of the same.

Prior to this time, there had been some negotiations and perhaps some bickering between the County Court of Douglas County and Mr. Benson, chairman of the highway commission, as to the location of the route; and it is claimed on behalf of the plaintiff that there was an understanding between the County Court and Benson that the road should be routed by. way of Riddle, and that the County Court of Douglas County expended considerable sums of money in improving portions of said highway and preparing it for permanent paving by the highway commission upon that understanding.

It is claimed on behalf of the plaintiff that the cutoff route is largely a new road, and that the highway commission has no authority to lay out or create new roads where county roads already exist; but are confined to the selection of existing roads; that the Riddle road was definitely designated as the Pacific Highway by the act of the legislature; that the highway commission is estopped from routing the Pacific Highway on any road except through Riddle, by the understanding between the County Court and Mr. Benson, the chairman of the commission; that the contract for grading the road is void, because the rights of way had not been obtained at the time of letting the contract; and, finally, that there was an abuse of discretion upon the part of the highway commission in attempting to locate the road over the "cutoff" route.          REVERSED AND SUIT DISMISSED.

For appellants there was a brief over the names of *Mr. J. M. Dever, Mr. Jay Bowerman, Mr. George M.*

*Brown,* Attorney General, and *Mr. Oliver P. Coshow,*
with oral arguments by *Mr. Devers* and *Mr. Bower-
man.*

For respondent there was a brief over the names of
*Messrs. Orcutt & Rice,* and *Mr. Ira Riddle,* with oral
arguments by *Mr. A. N. Orcutt* and *Mr. Dexter Rice.*

As *amicus curiae* there was a brief and an oral
argument by *Mr. John W. Kaste.*

BENNETT, J.—The main contention on the part
of the plaintiff and respondent, and the one upon
which the court below rested its decision in plaintiff's
favor, is that the highway commission has no author-
ity to create or lay out a new road; but that that
authority is vested exclusively in the County Courts;
and the highway commission can only designate or
adopt roads which are already county roads and pub-
lic highways, as a part of the state system of roads.

In its conclusion that the highway commission had
no power to designate or lay out a road for a state
highway, where there was no public road before, we
think the court below erred. The contention of re-
spondent in this regard is based upon two grounds:

First. That any attempt on the part of the legis-
lature to grant such power to the highway commission
to create or establish a new road would make the law
special and local, and be in conflict with Section 23,
Article IV, of the Constitution of the State of Oregon,
which provides that the legislative assembly—

"Shall not pass special or local laws * * for laying
out, opening, and working on highways, and for the
election or appointment of supervisors."

Second. That the legislature did not, by the act
of 1917, and the succeeding act of 1919, attempt or

intend to confer any such power to create new highways or portions of new highways, upon the highway commission.

1. As to the first proposition, we do not think that the act of the legislature in question was in conflict with the constitutional provision in question. It is now well settled that all power of legislation belonging to the people is vested in the legislature, unless such power is restricted and limited by some constitutional provision. Of course, it follows that in the first instance the power to create roads, and to regulate and control them, to lay them out, change or vacate them, is vested in the legislature, and it may do any of these things fully and freely, and in any manner it may see fit to adopt, unless restricted by the Constitution itself.

It will also be noticed that the constitutional provision in question does not in any way restrict or limit the *general power* of the legislature in relation to roads and highways, but is only directed toward the *manner* in which that power shall be exercised. The Constitution does not say that the legislature cannot create highways, or change highways, or lay out highways, or that such power shall be vested in the County Courts, or in any other tribunal. It only provides that the legislature shall not take such action *by special or local laws.* In this case we think that both the provisions and the purpose of the laws in question were general and not local or special. The act of 1917 provides for a *general* system of state highways, consisting of trunk roads along the main routes of travel and commerce, with branch lines extending out into every portion of the state. It provides for a highway commission, whose power, authority, and duty is not confined to any one person or thing, or to any one county or place, but are general and extend

to every hamlet and`neighborhood in the state. The fund to provide for this highway system is also general, and is raised by general taxation and general license provisions.

The courts have found much difficulty sometimes, in close cases, in distinguishing between general laws on the one hand, and local and special ones upon the other; but here the act is so broad in its scope, so general in its nature, that there is little, if any, room for questioning its character as a general law. The respondent depends upon *Sears* v. *Steele,* 55 Or. 544 (107 Pac. 3), to support its contention. However, the question at bar was not passed upon in that case, but was especially reserved, the court saying:

"Whether the state, by general laws, may enter upon the construction of public highways, to be built, owned, and managed by the state, is not before us for decision, and upon that subject we express no opinion."

In that case the act provided for the construction of two local roads—one in Jackson County, from Medford to Crater Lake, and one in Klamath County, from Klamath Falls to Crater Lake—and the act was so framed that either of them could be proceeded with, without the other. There was no provision for a general system of roads over the entire state, or for a permanent commission with authority to create and designate such roads. It was upon the ground that the roads in question in that case were local in their character and nature that the court distinguished that case from the previous case of *Allen* v. *Hirsch,* 8 Or. 412.

"But it is urged that the road proposed in the act now under consideration is a state road, intended, when completed, to extend entirely across the state and to unite remote sections thereof. It is true that

the title so indicates, but by the body of the act no provision is made for the laying out, opening, or working of any road, except through the counties of Jackson and Klamath, or, in case both of these counties do not see fit to accept the overtures of the state and appropriate the required $50,000, then through Jackson County alone; and it is provided that such road shall be a county road, not a state road. Section 4 of the act is as follows: 'That such money shall be expended only upon a county road legally established.'

"The local character of the act is further indicated by the provision that, as soon as Jackson County has made its appropriation of $50,000 to aid in the construction of a road from Medford, Jackson County, to a point on the west line of the Cascade Forest Reserve, on the route to Crater Lake, the Governor shall appoint a commission and thereupon twenty-five per cent of the sum appropriated shall become available for use in Jackson County and $12,500 each year for three years thereafter, and upon Klamath County making a like appropriation the same amounts become available in like manner. Each county stands alone. If Jackson County appropriates $50,000, and Klamath County does not, Jackson County, at the end of three years, has a county road, the beginning and terminus of which is selected by the state, and practically designated by the act itself; and there the road ends, as it begins, entirely within the confines of one county, and is a county road."

We think the act in question here is clearly in its main features a general and not a special or local act, and was in this regard within the power of the legislature. Whether there are any minor provisions of the act, not involved in this proceeding, which are special and local, and therefore not constitutional, is a question not necessary to decide at this time; but, so far as the act confers authority upon the commission to lay out and create highways, we hold it is general in its character.

2. Upon the second branch of the contention, that the legislature, by the acts in question, did not in fact confer power upon the highway commission to lay out and create new roads, as a part of the state highway, whenever it may be necessary to secure a good alignment or the best possible grade we think that question, also, must be decided in favor of the contention of appellants.

It is true that the act does not say in express words that the commission may "lay out and create new roads." But we think that power is implied quite clearly by many of the provisions of the act, which make the intention to grant the power as plain as if it were conveyed by express words.

Section 3 of Article II of the Act of 1917, creating the highway commission (Chapter 237), provides:

"Upon the *selection* of state highways hereinafter provided for, the decision of the commission must be unanimous."

Section 5, Id., contains this provision:

"Said Commission shall *designate,* construct or cause to be constructed a *system* of state highways within the State of Oregon, which highways shall be designated by number, and by the point of beginning and terminus thereof."

Section 6, providing for the duties of the highway engineer, has the following:

"On all state highways and on county roads constructed under his supervision a simple but adequate accounting system shall be installed in order that all expenditures and costs may be classified as the work progresses."

Section 7 provides:

"Whenever any county desires to construct or improve any part of a *state road* lying within such

county, the County Court of such county may make application *to the State Highway Commission* for the *definite location* and grade for such road, and the state highway engineer shall cause such road,, or portion thereof, *to be definitely located* and the grade thereof established.''

Section 9 provides for the obtaining of the right of way by the counties in the first instance, but it also provides:

''In case of neglect or refusal to so acquire said right of way, the *state shall have the power,* through the commission, to acquire said right of way, either by donation, purchase, agreement, condemnation, or through the exercise of the power of eminent domain in the same manner as is provided by law for acquiring property for other public uses.''

Section 10 again makes the same distinction between county roads and state roads:

''All moneys raised by counties for road purposes, and expended or to be expended upon roads within such counties *other than state highways,* shall be under the exclusive control of the County Court of such counties.''

The Bonding Act of 1917 (Chapter 423) provides:

''No description of any highway provided for herein shall be construed to prevent the State Highway Commission from making such local changes in the location thereof as they may deem proper.
''The State Highway Commission is also authorized to adopt such other roads or routes connecting portions of the State and to provide for the construction of post roads or forest roads over such routes and the improvement and maintenance thereof, and to pay for the same from the fund created by House Bill No. 21 referred to by title in section 8 hereof.''

Section 10 of the Act of 1919 (Chapter 173) provides:

"No description of any highway provided for herein shall be construed to prevent the state highway commission from *making such local changes* in the location thereof as the commission may deem proper; and the state highway commission is authorized and empowered to designate and *define* as state highways other and additional roads as from time to time they may deem of sufficient public importance, and may improve, better or pave the same."

It seems perfectly plain, from all of these provisions, that it was the intention of the legislature that the highway commission should have power to lay out, designate, and improve roads where there had previously been no highways. Otherwise, why would there have been any provision for acquiring rights of way, and why any provisions as to local changes, and why the distinction between state and county roads, and the provision for the definite location of roads by the state engineer?

If this were not the right construction, it would be impossible for the commission to work out any complete system of connecting roads. The commission would be entirely at the mercy of the County Courts, and would have to follow the roads, as designated by the County Courts, however, difficult or impossible the grades and alignment might be. It would entirely prevent the commission from taking advantage of any cutoffs, or new alignments, however much better the new route might be than the old one.

It is a well-known fact that many of the public roads designated by the Highway Act, or portions thereof, were not in existence at all at the time of the passage of the act. The purpose of the act could not, therefore, in such cases be carried out by the highway commission, unless it had the power to designate and lay out new roads. In some cases one county might desire to have the highway running to

the county line between two counties in one place, and the adjoining county might elect to have the highway through its county, commence on the same county line at an entirely different place. There could be no system of highways, as contemplated and called for by the act, if the County Courts controlled the location, nor unless the commission, whose duty it is to provide such system, had authority to designate the route of the road.

3. We do not think the construction of this act is doubtful in this regard. But, if it were, we would be bound to construe it by its four corners and in such a way as to carry out and effectuate the obvious intent of the legislature. In some cases the legislative act designates particular towns and cities through which the highway must pass, and such designation is, of course, controlling upon the commission, but in other respects the location is left to the commission.

4. Neither do we think there is anything in the other objections, to the construction of this piece of road, which would justify the court in enjoining the same and holding up the work. We do not think that the road by Riddle was officially and definitely located as the Pacific Highway, prior to the act of 1917, or at any time thereafter. The road map, which is claimed to have adopted that road as the highway, was prepared and adopted long after the passage of Chapter 237 of the Laws of 1917. It was a general map on a very small scale, and we hold that it did not, and was not intended to definitely locate the highways referred to. Many of the roads shown thereon had not even been surveyed at the time of the preparation of the map, and the commission, in its resolution adopting the map, carefully pointed out

that it was subject to change and was not a definite location.

5. The agreement between the County Court and Mr. Benson (if there was such an agreement) was not with the commission, but with Mr. Benson alone, and it was not in any way binding upon the commission. It was not in any sense an official act, so there could be no estoppel of the commission thereby, even if the doctrines of estoppel would otherwise apply.

6. Neither do we think the proceeding can be enjoined by a taxpayer of the county, on account of the failure of the commission to obtain some of the rights of way, before the contract was let. The commission can always obtain a right of way by condemnation, if that shall become necessary, and we do not think that the provision of the act that "the right of way for state highways, and roads, improved or otherwise constructed under this act, shall be acquired by the counties in which the highways are situated, by either donation, purchase, agreement, condemnation, or through the exercise of the power of eminent domain by the county before any contract shall be let," is mandatory upon the commission, or prohibitory of the letting of a contract, prior to obtaining the right of way, in such a sense that the contract for the grading work can be enjoined by a taxpayer because some part of the right of way has not yet been obtained.

As to the claim that the commission did not use sound discretion in adopting the cutoff, we do not think the evidence sustains the contention of the respondent. The most that can be claimed in that regard from the evidence, it seems to us, is that there is some room for question as to whether the location fixed by the commission was preferable to the other route. The very concession that there is discretion in the matter involves the right of the commission

to weigh the arguments in favor of the different routes and decide thereon, and as long as there is reasonable room for contention as to which was the better and cheaper and generally more satisfactory route, its judgment in relation to the matter would be conclusive.

7, 8. Here, as we have seen, the evidence discloses that the route adopted by the commission would be shorter; that the maximum elevation would' be considerably less, and there is a question, and room for the exercise of judgment, as to whether it will not ultimately be the cheaper route. Under these conditions, we would not be justified in interfering with the conclusion of the commission, which we must assume, in the absence of evidence to the contrary, was honestly and conscientiously applied to the facts in the case.

The judgment of the court below will be reversed and the plaintiff's suit dismissed.

REVERSED AND SUIT DISMISSED.