### POSTAL TELEGRAPH CO. v. STATE HIGHWAY COMMISSION et al.

(District Court, D. Oregon. December 12, 1921.)

No. 8578.

1. **Telegraphs and telephones** ⬤�longrightarrow 10 (2)—**Congressional grant of right to construct inapplicable to combined telegraph and telephone line.**

Comp. St. § 10072, authorizing any telegraph company to construct, maintain, and operate telegraph lines along any of the post roads of the United States, gives no authority to construct telegraph and telephone lines in combination.

---

**2. Telegraphs and telephones ⬿10(2)—Authorized to construct lines under state laws, subject to supervision of highway commission.**

Under Or. L. § 6005, Laws Or. 1917, c. 237, Laws Or. 1917, c. 295, § 2, and Laws Or. 1917, c. 299, § 3, a telegraph company has a right to construct and maintain combined telegraph and telephone lines on state highways; but such right is subservient to a reasonable supervisory power of the state highway commission as to the mode, manner, and locality of construction and maintenance.

**3. Highways ⬿165—Statutes of Oregon contemplate two kinds of roads.**

Or. L. § 6005, Laws Or. 1917, c. 237, Laws Or. 1917, c. 295, § 2, and Laws Or. 1917, c. 299, § 3, provide for two characters of public roads; one being state highways, and the other county roads.

**4. Highways ⬿153—County courts without authority over state highways.**

Under Laws Or. 1917, c. 237, providing for a system of state highways, and in view of article 2, § 9, as amended by Laws 1919, c. 182, the county court is without jurisdiction, power, or authority to regulate, control, or designate the location of service utilities on state highways, and whatever authority it formerly possessed in that particular, if any, is now vested in the state highway commission.

**5. Highways ⬿153—Commission may prevent encroachment, etc., on state highways.**

The power and authority of the state highway commission to superintend, construct, and maintain the state highways includes the authority to preserve from destruction or deterioration, and the authority also to forestall and prevent encroachment that would prove deleterious to the highways, or detrimental to the use thereof by the general public.

**6. Telegraphs and telephones ⬿10(11)—Commission cannot arbitrarily deny use of state highways.**

As Or. L. § 6005, grants public service corporations the right to construct and operate telegraph and telephone companies along the public roads of the state, the state highway commission cannot so exercise its authority over state highways as to deny such privilege arbitrarily, but must exercise its judgment on the suitableness, safety, etc., of the places, poles, and wires by the criteria that would be applied by all persons skilled in such affairs, who would seek to reconcile the welfare of the public with the installment of the plant.

**7. Telegraphs and telephones ⬿10(11)—Refusal to allow construction injuring scenic beauty of highway not arbitrary.**

Where a state highway possessing scenic perspective had been constructed at great expense, the refusal of the state highway commission to permit the construction of a telegraph and telephone line on a side of the highway, where in its opinion the scenic beauty would be marred, was not arbitrary, though construction of the line on the other side of the road would be more expensive.

**8. Telegraphs and telephones ⬿10(11)—Evidence held to show highway commission's requirement as to construction not unreasonable.**

Evidence as to the practicability of constructing a telegraph and telephone line on a state highway on the poles of an existing line *held* to show that the refusal of the state highway commission to permit its construction on the other side of the road, where it was claimed it would mar the scenic beauty, was not unreasonable.

**9. Telegraphs and telephones ⬿10(11)—Findings of Public Service Commission not binding on highway commission.**

The finding of the Oregon Public Service Commission, in an investigation made at the request of the state highway commission, that it was impracticable and unreasonable to require a telegraph and telephone line to be constructed on the poles of an existing line, *held* not res judicata, but merely advisory to the highway commission.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit for an injunction by the Postal Telegraph Company against the State Highway Commission and others. Injunction denied.

Dey, Hampson & Nelson and Geo. L. Buland, Jr., all of Portland, Or., for plaintiff.

J. M. Devers, of Salem, Or., and L. A. Liljeqvist, of Portland, Or., for defendants.

WOLVERTON, District Judge. This is a suit for an injunction restraining the state highway commission and J. M. Devers, who is an assistant to the Attorney General of the state of Oregon, from interfering with the plaintiff in its proposed construction of a telegraph line along and upon the right of way of the Columbia River Highway, extending from Goble to Astoria, in the state of Oregon. By the complaint it appears that plaintiff is proposing to construct a telegraph line only; but by the testimony adduced at the hearing it appears that the poles are to be used for maintaining, not only a telegraph line, but two telephone lines, to be used in connection with its telegraph system.

The highway commissioners are frank to aver that the commission declined to permit the construction of plaintiff's system on the north side of the highway for the reason that it would interfere with the scenic beauty thereof, but is not averse to its construction and maintenance on the south side of the highway, if constructed in connection with the Pacific Telephone & Telegraph system, and the inquiry first presented is whether the highway commission has any power to interfere with the construction by plaintiff of its line upon and along the highway.

Plaintiff claims authority for constructing and maintaining its line under two statutes; one being an act of Congress and the other an act of the Legislative Assembly of the state. Under the former act, any telegraph company is accorded the right to construct, maintain, and operate lines of telegraph over and along any of the military and post roads of the United States, to be so constructed and maintained as not to interfere with the ordinary travel upon such roads. Section 10072, U. S. Comp. Stat. The state act grants the right and privilege to construct, maintain, and operate telegraph lines and telephone lines, for the purpose of conveying electric power or electricity, along the public roads and highways of the state, provided that the county courts of the several counties through which the lines may be constructed shall have power and authority to designate the location upon such roads and highways where such fixtures may be placed. Section 6005, Olson's Laws of Oregon.

[1] The right and authority to construct, maintain, and operate under the congressional act is limited to telegraph lines, and does not extend to the construction, maintenance, and operation of telephone lines. Richmond v. Southern Bell Telephone & Telegraph Co., 174 U. S. 761, 19 Sup. Ct. 778, 43 L. Ed. 1162. Under plaintiff's complaint, if we should look to that alone, plaintiff's right would be clear

to construct and maintain a telegraph line along the highway in question—it being a post road—so that it did so in a manner not to interfere with the ordinary travel thereon. But the testimony shows that plaintiff's purpose is to construct, not only a telegraph line, but to maintain, in connection therewith, telephone lines also. This is without the pale of the federal statute, and the combined service cannot be so maintained by its authority.

[2] As it pertains to the state act, I am impressed that plaintiff's right is clear to construct and maintain the combined lines over and along the public roads and highways of the state; but that right is subservient to a reasonable supervisory power of the highway commission as to the mode, manner, and locality of construction and maintenance, for reasons following:

The Legislative Assembly of the state, by its act approved February 19, 1917 (chapter 237, Gen. Laws 1917), entitled "An act to provide a general system of construction, improvement and repair of state highways and for the administration and operation thereof," etc., provides for the construction and maintenance of a system of state highways; the purpose being, among others, to conform to the requirements of Congress in extending to the states government aid in the construction and maintenance of post roads. The term "state highway," as defined by the act, "shall be taken and deemed to mean any road or highway designated as such by the commission or by law." The act provides for the creation of a "state highway commission," and accords to the commission certain powers, among which are to "have general supervision over all matters pertaining to construction of state highways," etc., and to "designate, construct or cause to be constructed a system of state highways within the state of Oregon," which shall be designated as pointed out. So it is conceded, by direct declaration of the complaint, that the commission is "authorized and empowered, among other things, to construct, operate, and maintain a system of state highways in the state of Oregon." It is under this authority that the Columbia River Highway was constructed at great expense, and is now being maintained.

State highways are to be differentiated from county roads. Prior to the authorization for the construction of this class of highways, there were no such roads in the state. Whatever roads existed were known as county roads, except that, earlier in the history of the country, there were certain highways known as toll roads, and certain others known as territorial roads. By statute, however, all territorial roads were declared to be county roads. Section 38, tit. 1, c. 47, General Laws of Oregon 1845–1864. By the same title (section 1) it was declared that all county roads shall be under the supervision of the county court of the county wherein the road is located, and that none such shall be altered or vacated except by authority of such court of the proper county.

By a recent statute, adopted at the same session of the Legislature as was the State Highway Act, supra, which seems to be a recasting of the laws touching county roads, it is again declared that all county

276 F.—61

roads shall be under the supervision of the county court of the county wherein the road is located, and it is further declared that each county court within the state shall have the authority, and it shall be its duty, to supervise, control, and direct the laying out, opening, establishment, locating, relocating, changing, alteration, straightening, working, grading, maintenance, and keeping in repair of all such roads. Section 2, c. 295, Laws of Oregon 1917. By a still later statute, adopted at the same session of the Legislature, it is again declared that—

"The establishment, construction, improvement and maintenance of all county roads shall be entirely under the jurisdiction and control of the county court." Section 3, c. 299, Laws of Oregon 1917.

[3, 4] It is plain, therefore, that the law provides for two characters of public roads; one being the state highways, and the other county roads. The highway commission is charged with the supervision, construction, and maintenance of the first, and the county courts of the second. While the law provides for concurrent acts of the county courts and the highway commission in some instances, in the procedure in establishing state highways, it would seem that the superior authority, as it pertains to such highways, rests with the commission, as witness section 9, article 2, of the Highway Act, supra, by which it is provided that rights of way shall be acquired by the county through condemnation if necessary, and that, if the county court refuses to act, the highway commission may condemn, through the exercise of the right of eminent domain, on its own account. This section has been amended (chapter 182, Laws of Oregon 1919), but only to define more clearly the authority of the commission to exercise the right of eminent domain in the premises. See Rockhill v. Benson, 97 Or. 176, 191 Pac. 497.

Thus it will be seen that the county court is without jurisdiction, power, or authority to regulate, control, or designate the location of service utilities upon state highways, and whatever authority it formerly possessed in that particular, if any, is now relegated to the highway commission.

[5, 6] The power and authority of the highway commission to superintend, construct, and maintain state highways includes the authority to preserve from destruction or deterioration, and, if this be so, the authority also to forestall and prevent encroachment thereon by any person or corporation that would prove deleterious to such highways or detrimental to the use thereof by the general public. I think this follows from the general power and authority accorded the highway commission. However, as the right and privilege are granted to public service corporations to construct, maintain, and operate telegraph and telephone lines along the public roads of the state, the highway commission cannot so exercise its authority as to deny arbitrarily such corporations that right or privilege; but it does possess the power and authority of reasonable regulation as to these lines—that is, as to the manner of their construction and the place of location as they may affect the highways and their use by the public. Western Union Tele-

graph Co. v. Richmond, 224 U. S. 160, 168, et seq., 32 Sup. Ct. 449, 56 L. Ed. 710.

The commission, paraphrasing the language of the court, is to exercise its judgment on the suitableness, safety, etc., of the places, poles, and wires by the criteria that would be applied by all persons skilled in such affairs who should seek to reconcile the welfare of the public and the installment of the plant. And it might be said here, as was said in the case just cited, that, except in a "negative sense," the statute according the right and privilege of constructing public service lines of the kind over public highways "is only permissive, not a source of positive rights." The court was there speaking of the Act of Congress of July 24, 1866 (U. S. Comp. St. § 10072), supra.

So it is that the highway commission may exercise this power of regulation, within reasonable bounds, to conserve both the service utilities and the public welfare, and such utilities must submit to its designation of the place of locating their lines and the manner of their construction, so long as the acts of the commission in this respect are not a denial of their right to construct and maintain along the highway, and are not tantamount to an arbitrary exercise of its power and authority in the premises.

[7] Much has been said respecting the commission's position that to allow construction on the north side of the highway would mar, and in some measure destroy, its scenic beauty. I cannot say that this is a wholly arbitrary position. The highway has been constructed at great expense, and that it possesses scenic perspective cannot be denied. Many persons, no doubt, are induced to travel it because of that fact. Why should it not be preserved, so far as practicable, consonant with the rights and privileges of those concerned? So of the extra expense that might attend a location designated by the commission, while it is a matter to be taken into consideration in the interest of the plaintiff, yet it should be considered along with the great expense attending the construction of the highway, and how best to conserve its utility in the interest of the public welfare.

[8] Much testimony has been adduced, a good deal of it of an expert character, touching the supposed difficulty of combining the Postal lines with the Pacific Telephone & Telegraph Company's lines, which are now constructed and being maintained on the south side of the highway. It can serve no purpose of particular advantage to attempt to set forth in detail the testimony bearing upon the subject. The several witnesses who were called for plaintiff seem to concur in the view that it would be possible for the plaintiff to overbuild the Pacific lines, but not practicable—some say not desirable—owing to the added expense of construction and maintenance. Underbuilding is discussed by them, but they seem to think that overbuilding would be the more feasible, if the lines are to be combined. On the other hand, Mr. Hennessy, telephone and telegraph engineer for the O.-W. R. & N. Company, an entirely disinterested witness, with large experience in the construction and maintenance of telegraph and telephone lines, both singly and in combination, is of the firm opinion that the lines can be

most economically utilized in combination. I merely stop to quote an excerpt from what he has to say on the subject:

"Q. Then you think, do you, that it would be preferable to underbuild than to parallel the Pacific people between their line and the highway, do you? A. If there was room, it would be better to parallel.

"Q. Well, knowing the width of the highway there, with possible widening in the near future, would you suggest as the most preferable way the underbuilding? A. I would suggest, as the most feasible and practicable way, for them both to go on together on the same pole line.

"Q. And you think that could be easily done? A. I cannot see anything to prevent it. We have the same thing.

"Q. (cross) Would you still feel, Mr. Hennessy, that going on the same pole line was the most feasible and practicable thing, if you knew that the Public Service Commission of Oregon, which has jurisdiction to order that, had made an investigation of it, by hearing testimony and through its engineers, and had come to the conclusion that it was impracticable and unfeasible and more expensive? A. For them both to go on together?

"Q. Yes. A. Why, I cannot see where it would be more expensive to go on on a joint line. It would be cheaper for both companies, I should think.

"Q. And that feeling is very real on your part—you would maintain it still, even though you knew that the Public Service Commission, through its engineers and commissioners, had looked into the question, on the application of the state highway commission, and had come to the conclusion that it was uneconomical and impractical? A. Well, my experience in the business for the length of years I have spent in it, there's thousands of lines on joint pole lines, and working fine—telephone and telegraph. It would be ridiculous for me to get up here and deny that, or to say it was impossible, from my experience and knowledge."

Mr. Yeon, one of the commissioners, has indicated in a forceful way why he insists upon the combination. He says:

"My hope was that there could be a joint agreement between the two pole lines—the two telephone people, rather—to use the present set of poles, without adding any more to the highway. That was my main ambition, that it should be done. In looking over the matter, I find that in Los Angeles county they have eliminated 30,000 poles from the county in doing that very thing, and it has proven to be cheaper for both companies to operate on one pole line as much as they possibly can, rather than have two or three.

"Q. (by the Court). Does that include telephone and telegraph lines in combination? A. Yes, sir; the whole thing, all the way through. And that is the line that we have been working on."

[9] True, the Public Service Commission has found that it is impracticable and unreasonable to require the Postal Company to occupy the Pacific lead. The examination, it must be said, also, took place at the request of the highway commission. While great respect must be accorded the findings of the Public Service Commission, I am not persuaded that its findings in the present instance are to be regarded as res judicata, and as settling the matter for all time. They are rather to be considered as advisory to the highway commission. Notwithstanding, the highway commission still insists that plaintiff's lines should go on the south side of the highway, and that they should be constructed in combination with the Pacific lines. The highway commission possesses, as we have seen, a regulatory discretion in the premises, and, so long as it does not exercise that discretion arbitrarily and unreasonably, to the denial of plaintiff's rights, the court cannot interpose to direct its judgment.

I conclude, from a survey of the whole testimony bearing upon the subject, that the highway commission's position is not unreasonable, nor does it arbitrarily deprive plaintiff of its right and privilege of occupying the highway with its lines.

Injunction denied.