Argued April 3, affirmed May 29, 1923.

## ZILESCH ET AL. v. POLK COUNTY ET AL.

(215 Pac. 578.)

**Highways—State Commission Authorized to Make "Local Changes" in Places Called for in Description of Proposed Highway—"Local."**

1. . The word "local" means relating to place, and the words "local changes," in Laws of 1917, Chapter 423, Section 8, subdivision 5, providing that no description of any highway shall be constructed to prevent the state highway commission from making such local changes in the location thereof as they deem proper, refer to changes from points or places specified in the act, and under such subdivision, and also laws of 1921, Chapter 361, Sections 1, 2, conferring on the commission power to make changes in the location of highways, for better alignment thereof, etc., the commission was not bound by local calls for places described in subdivision 2 of Section 6, Laws of 1917, relating to construction of the Pacific Highway through Polk County.

**Constitutional Law—Statutes not Declared Unconstitutional Unless Clearly so.**

2. Before a statute can be declared unconstitutional such unconstitutionality should appear to be free from all reasonable doubt.

**Statutes—Act Granting State Highway Commission Power to Make Changes in Highway not Invalid as Amendment to Former Act.**

3. Laws of 1921, Chapter 361, authorizing the State Highway Commission to make changes in the location of highways designated in Laws of 1917, Chapter 423, held a new grant of power to change location of public highways, and not invalid as an amendment of Chapter 423 by mere reference thereto.

**Statutes—Either the Legislature or the People Through Initiative and Referendum may Amend an Act Passed by the Other.**

4. The legislature and the people, through initiative and referendum, being co-ordinate legislative bodies, either may independently amend an act passed by the other.

From Polk: PERCY R. KELLY, Judge.

In Banc.

This is a suit brought by plaintiff and other taxpayers of Polk County against the county of Polk, the county judge, the county commissioners, the county clerk, the county treasurer and the Oregon State Highway Commission to enjoin the defendants from carrying into effect and constructing the West Side Pacific Highway, and to enjoin the carrying out of certain contracts made between the state highway commission and Polk County, which contracts are in substance as follows: The state highway commission agreed to construct for and on behalf of Polk County the necessary grade and bridges properly to prepare for hard surfacing that certain highway leading from Monmouth south, following generally the course of the existing county road, to a point approximately one-half mile south of the Luckiamute River; it being understood by the parties to the agreement that the road was being constructed as a market road and with market road funds; it being likewise understood by the parties that, in addition to being a county highway and market road, the same road was likewise a state highway and would subsequently be improved with state highway funds as a state highway and be the Pacific Highway in Polk County. On the same date the highway commission entered into a contract with Polk County, by which agreement the commission in compliance with a request made by the County Court of Polk County, was to advance or loan to Polk County certain funds to be used in the preparation of a road from the Luckiamute River south to a point one and one-half miles south of the Benton-Polk County line and to enable the county to prepare for pavement of the highway from Rickreall north and to finish the grade and

bridges on the unfinished portions of the Salem-Dallas road, so that such road, together with each of the other two roads, might be prepared for pavement by the state highway commission. Both of these contracts were attacked in the Circuit Court for Polk County by appellants in this suit, the contracts being referred to in the pleadings as contracts "A" and "B," respectively; the contract involving the expenditure of the market road money being contract "A," and the contract involving the loan to Polk County being designated as contract "B."

The ostensible purpose of the prosecution of the suit by appellants was to stop the payment of funds under both of these contracts for the reason, as alleged by appellants, that such expenditure in each instance was unlawful.

There were, therefore, in the case at bar three principal issues presented to the Circuit Court: (1) the issue growing out of contract "A," which involved the expenditure of market road money on state highways; (2) the issue growing out of contract "B," involving a loan of money to the county; and (3) the question of the legal location of the Pacific Highway in Polk County, the appellants claiming that any location that did not pass through Dallas, Monmouth and Independence was invalid and unlawful. Upon a trial in the Circuit Court it was held that the expenditure of market road money on state highways was an expenditure not contemplated by the market road law and was therefore invalid and unauthorized appropriation of public funds. The court likewise held, with reference to contract "B," that the loan of funds by the state highway commission to Polk County for the purpose above stated resulted in the creation of a debt in such an amount as to do violence to the Constitution prohibiting the creation of debts

by counties, and was therefore invalid and unlawful. Thus, upon two of the propositions mentioned the appellants prevailed in the lower court; but as to the question of the location of the highway the court held that the appellants were not entitled to the relief demanded and upon that issue the defendants prevailed and plaintiffs appealed to this court; so that there is but one question here to be decided, and that is, the real location of the Pacific Highway, so that it leaves off the line thereof the towns of Dallas and Independence. This involves a construction of several sections of the statutes.

In 1917 the legislature referred to the people an act providing for the construction of certain highways, among others, the Pacific Highway, and designated its route as follows:

" * * from the Multnomah County line through Washington County and Yamhill County by way of Hillsboro, Forest Grove, McMinnville to Dallas, Monmouth and Independence in Polk County; to Corvallis and Monroe in Benton County and through Eugene to the north line of Douglas County."

Subdivision 2 of Section 6, Chapter 423, General Laws of Oregon of 1917.

In subdivision 5 of Section 8 of the same statute the following language is used

" * *

"No description of any highway provided for herein shall be construed to prevent the State Highway Commission from making such local changes in the location thereof as they may deem proper."

In Chapter 361 of the General Laws of Oregon for 1921 the following language is used:

"Section 1. That the Oregon state highway commission is hereby authorized and empowered to make such changes in the location of the highways named

or designated in Chapter 423 of the Oregon Laws for 1917, now known as Chapter IV of Title XXX, Oregon Laws, as in the judgment and discretion of the highway commission will result in better alignment, more advantageous and economical highway construction, or will contribute to and afford a better or more serviceable system of state highways than is possible under the present statutory locations.

"Section 2. Nothing in this act shall be deemed or intended to in any way amend any of the provisions of Chapter IV of Title XXX, Oregon Laws, but the provisions of this act shall be deemed and considered to be an authority and power conferred upon the state highway commission in addition to the powers and authority conferred by the provisions of said Chapter IV of Title XXX, Oregon Laws."

AFFIRMED.

For appellants there was a brief over the names of *Mr. Martin L. Pipes, Mr. John M. Pipes, Mr. D. E. Fletcher* and *Mr. George A. Pipes,* with oral arguments by *Mr. Martin L. Pipes* and *Mr. Fletcher.*

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. J. M. Devers,* Special Assistant Attorney General, and *Mr. J. N. Helgerson,* District Attorney, with oral arguments by *Mr. Devers* and *Mr. Helgerson.*

McBRIDE, C. J.—1. The decision of the Circuit Court is not attacked as to the two points decided in favor of the appellants; so there remains only to consider the legality of the location of the highway in the manner that disregards the towns of Dallas and Independence as fixed monuments on the road. This, again, turns upon the construction to be given to subdivision 5 of Section 8, *supra,* which, if broad enough to confer the power exercised by the commission in changing the route of the highway, ends appellants' case. Or, if the section last above quoted

shall be held valid, then, irrespective of any construction which may be put upon subdivision 5 of the original act, the same result must follow. We are of the opinion that subdivision 5 is in itself sufficient to authorize the changes in location made by the commission and are further of the opinion that Chapter 361, *supra,* was a valid exercise of legislative power; and, these two propositions being decisive of this case, it will be unnecessary to discuss the other issues disclosed by the pleadings and briefs of counsel.

In view of the language employed in subdivision 5 of Section 8, above quoted, the designation of certain towns, including Dallas and Independence, as being places through which the highway should run cannot be taken as a definite, unalterable location of the road. The description was general and was intended to be so. No survey or examination of the route had been made and it was evidently on the legislative mind that upon a survey being made it might turn out that it would be cheaper or more advantageous to deviate from the route specified in favor of a better route or one which required less expense in its construction. The section quoted either expresses this intent or it is meaningless except by a forced construction of the language used.

Subdivision 2 of Section 6, *supra,* describes a highway, with fixed termini and intermediate local calls, namely, Hillsboro, Forest Grove, McMinnville, Dallas, Monmouth, Independence, etc. These calls are a part of the description of the route to be pursued; but, no doubt for the reason above adverted to, it was thought best not to tie the hands of the highway commission to such an extent that if upon further investigation it should be found that a better route should be disclosed the commission would be prevented from giving the people of the state the advan-

tage of such discovery.  The act describes a general
or tentative route, but permits the commission to
make "such local changes in the location thereof as
they may deem proper."   What is a local change?
Bouvier defines "local" to mean "Relating to place.
A particular place."   Now, the only "places" or
"particular places" mentioned in the act are these
towns; therefore it follows, necessarily, that in using
the words "local changes" the legislature had refer-
ence to changes from the points or places specified
in the act.   No other construction is logically admis-
sible.   When the commission attempted to make the
change shown by its present survey it soon found
itself involved in a controversy with citizens of Dallas
and Independence who denied its authority to make
any change in the location of the highway which
would deflect it from the points mentioned in the act
of 1917, and at the 1921 legislative session, Chapter
361, Laws of 1921, contained a provision quoted
herein which in terms granted the commission ple-
nary power to make such changes in the location "as
in the judgment and discretion of the highway com-
mission will result in better alignment, more advan-
tageous and economical highway construction, or will
contribute to and afford a better or more serviceable
system of state highways than is possible under the
present statutory locations."

It is difficult to see how language could be more
explicit of an intent to leave the whole matter of loca-
tion of the route to the commission than that thus
used.   In the opinion of the writer the section was
unnecessary, but it served to clear up any doubt
which might have existed as to the true intent of
subdivision 5 of Section 8, *supra*; and, but for a *dic-
tum* in *Rockhill* v. *Benson,* 97 Or. 176 (191 Pac. 497),
it is probable that this case would not have been

brought. Neither the construction of subdivision 2 of Section 8, *supra,* nor of the language quoted from Chapter 361, *supra,* was involved in that case. The town of Riddle had not been named in the highway act as a point on the Pacific Highway, but because the main highway previously laid out by the County Court ran through Riddle it was contended that the highway commission had no power to lay out a new highway but must conform the road to the then existing highway or to such other route as the county court should establish. Chapter 361, *supra,* was not in existence at the time *Rockhill* v. *Benson* was decided and was evidently passed with intent to clear up any doubt that might have been created by the *dictum* in that case to the effect that where the bonding act designated certain points on the route of the highway such route could not be changed by the commission. Under the conditions existing and the issues presented in the Rockhill case the expressions relied upon by appellants cannot be held to be the deliberate opinion of this court or even of the learned jurist who wrote the opinion.

2. Is Chapter 361 of the General Laws of Oregon for 1921 violative of any provisions of the Constitution? In discussing this question we must bear in mind the often repeated doctrine that the courts should exercise the power of declaring a statute unconstitutional with extreme caution. When a statute is on trial for unconstitutionality it should be afforded every reasonable chance for its life. This court is committed to the doctrine that before a statute can be declared unconstitutional such unconstitutionality should appear to be free from all reasonable doubt: *Cline* v. *Greenwood,* 10 Or. 230; *Crowley* v. *State,* 11 Or. 512 (6 Pac. 70); *Crawford* v. *Linn County,*

11 Or. 482 (5 Pac. 738); *State* v. *Cochran,* 55 Or. 157, 180 (104 Pac. 419, 105 Pac. 884).

3. It is contended that the act is unconstitutional because it is an amendment to Chapter 423, Oregon Laws of 1917. We do not so regard it. It may be a piece of unnecessary legislation and an attempt to confer power, which we hold already existed in the commission; but it repeals nothing in the original act. The route of the highway was at least tentatively designated in the original act and, if we grant that such act located the highway even permanently through Dallas and Independence, the passage of a new and independent statute authorizing the commission to relocate it upon another route, if in the commission's judgment such route was better for any reason, did not repeal the statute which located the route in the first instance; that statute still stood and furnished authority to the commission to build the highway to Dallas and Independence if in its judgment the highway should run through those cities. On appellants' theory the state had *in posse,* if not *in esse,* a highway permanently located through Dallas and Independence. Having this, but being in doubt about the expediency of the location, it passed an independent act authorizing the commission to locate the highway elsewhere if it deemed such change advisable. It will be seen that the act is not directed at any particular location or city on the Pacific or other highway, but is a grant of power to make necessary changes on any state highway. The object of requiring an amended section to be set forth at full length as amended was to prevent confusion that might ensue if the legislator or citizen were required to compare all acts in order to determine what parts of the law were really in force. The intent of the act was to grant to the commission clear authority

to perform an act, for the doing of which the legislature or the framers of the bill deemed such authority theretofore lacking or at least doubtful. Counsel for appellants cite *Martin* v. *Gilliam County,* 89 Or. 394 (173 Pac. 938), as supporting their contention here, but there is little similarity. In that case, by Chapter 234, Laws of 1913, a budget law was enacted, applicable to counties only. In 1915 an act was passed providing that the provisions of Chapter 234 should be extended to all tax levying districts except cities having a population of over 150,000 inhabitants. It was a bald attempt to extend the provisions of a statute passed for one purpose so as to include other localities not mentioned in the original law. It was not a new and original act but an attempt to amend an old act by mere reference to the chapter number appended to it and without even referring to its title or publishing the statute at full length. In the case at bar there is no amendment, but a supposed new grant of power to change the location of a public highway. Believing this act to be within the Constitution, we hold the decree of the Circuit Court to be correct.

4. It is further suggested that, as the highway act was originally passed by submission of it by the legislature to the people, it cannot be amended by the legislature alone. This precise point in its present form has never been before this court, but we have always held from the case of *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498), that the legislature and the people through the initiative and referendum were co-ordinate legislative bodies and that either might independently repeal an act passed by the other, and we here so hold, no matter whether the measure is submitted by the initiative process or by an act of the legislature.

There is no suggestion of any abuse of discretion by the commission. Indeed, a reference to the map which is hereto attached would indicate that the route chosen by the commission was, as they contend, much

shorter, on a better grade and cheaper in construction than that designated in the original highway act; and, holding as we do, that they had the power to make the change indicated, the decree of the Circuit Court is affirmed.                                    AFFIRMED.

BROWN and McCOURT, JJ., took no part in the consideration of this case.