Argued September 15, reargued December 18, 1975,
affirmed March 8, 1976

ALLISON, *Appellant,*

*v.*

WASHINGTON COUNTY et al, *Respondents.*

(No. 35-145, CA 4353)

548 P2d 188

*David G. Frost,* Hillsboro, argued the cause and filed the briefs for appellant.

*John M. Junkin,* Assistant County Counsel, Hillsboro, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Langtry, Fort, Thornton and Lee, Judges.

LANGTRY, J.

**LANGTRY, J.**

Plaintiff initiated this declaratory judgment proceeding to seek a determination that an amendment to the Washington County comprehensive plan, adopted by the County Commissioners on December 30, 1974, was subject to referendum in the unincorporated area of Washington County. The trial court dismissed plaintiff's complaint on the ground of sovereign immunity.

The questions presented are: (1) whether sovereign immunity is here applicable; (2) whether and to what extent zoning ordinances and comprehensive plans are subject to initiative and referendum; and (3) if the present comprehensive plan amendment is referable, whether it can be submitted only to the voters residing in the unincorporated area of the county.

The facts were established by the pleadings. Plaintiff, a resident and property owner in the unincorporated area of Washington County, submitted to the defendant Director of Records and Elections a preliminary petition for a referendum on the comprehensive plan amendment, asking that it be submitted to the voters of the unincorporated areas of Washington County for their approval or rejection at the next general election. The defendant Director refused to accept plaintiff's tendered preliminary petition on the grounds that: (1) the amendment to the comprehensive plan was not subject to referendum; and (2) alternatively, if subject to referendum, it would have to be voted upon by all of the voters of Washington County. This declaratory judgment proceeding, the trial court's decision, and plaintiff's appeal followed.

I

We hold that the county is not immune from the present suit. In *Schlicting v. Bergstrom,* 13 Or App 562, 565, 511 P2d 846 (1973), in rejecting a claim of immunity, we said that public officials "do not have any discretion to discharge any public employe for con-

[ 573 ]

stitutionally impermissible reasons * * *." The other questions presented in this case must be resolved under the initiative and referendum provisions of the Oregon Constitution. Paraphrasing *Schlichting,* the defendants do not have any discretion to violate the Oregon Constitution. *See also,* Hanson v. Mosser, 247 Or 1, 7, 427 P2d 97 (1967), *overruled in part on other grounds Smith v. Cooper,* 256 Or 485, 488, 475 P2d 78, 45 ALR3d 857 (1970); *Denver v. Spears Hospital,* 142 Colo 347, 350 P2d 1057 (1960); *Walter v. Schuler,* 176 So 2d 81 (Fla 1965); *Baumgardt, d/b/a A & B Shop v. Isaacs,* 29 Ill 2d 29, 193 NE2d 31 (1963).

II

■ Authority to legislate locally by initiative and referendum is guaranteed by Art IV, § 1(5) of the Oregon Constitution. However, in *Tatum v. Clackamas County,* 19 Or App 770, 773, 529 P2d 393 (1974), a majority of a panel of this court held that Art IV, § 1(5) "is not self-executing" and that it is essential to "find additional legislative authority" allowing a local initiative or referendum election on any given question. In the quest for "additional legislative authority," the *Tatum* analysis disregards the constitution, and involves only statutory construction.

To illustrate, suppose a group of citizens wanted to adopt, by initiative, an ordinance requiring that a local mill stream be covered with planking.[1] Under the *Tatum* analysis, it would be essential to find a statute authorizing a local initiative on this specific question. Since we think it safe to assume that no such statute exists, the *Tatum* analysis would lead to the conclusion that there could be no such initiative election.

■ It is possible for statutes and ordinances to extend rights to initiative and referendum beyond the minimum level secured by the constitution. *See, e.g.,* ORS 276.712-276.722. However, the minimum

---

[1] Such a local initiative is discussed in *Gaston, Town of, v. Thompson,* 89 Or 412, 174 P 717 (1918).

guarantee of the constitution should not be allowed to be diluted by either legislative action or inaction. Therefore, a majority of the entire court is now persuaded that the present problem must be resolved under the Oregon Constitution, and joins in overruling *Tatum v. Clackamas County,* supra.

### A

As a preliminary matter, it is important to draw a threshold distinction between legislative and quasi-judicial matters. Action is legislative when it affects a large area consisting of many parcels of property in disparate ownership.[2] An example would be a zoning ordinance, that happened to be adopted by initiative, restricting buildings to a height of 30 feet in all of San Diego, California between Interstate 5 and the ocean.[3] Conversely, action is considered quasi-judicial when it applies a general rule to a specific interest, such as a zoning change affecting a single piece of property, a variance, or a conditional use permit.[4]

We are here concerned solely with legislative action—a comprehensive plan or zoning ordinance adopted or amended by initiative or referendum that affects a large area in disparate ownership. In this context, a substantial majority of cases hold there is no constitutional right to notice or hearing,[5] a considera-

---

[2] *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973); *Parelius v. Lake Oswego,* 22 Or App 429, 539 P2d 1123 (1975); *Culver v. Dagg,* 20 Or App 647, 532 P2d 1127 (1975).

[3] The use of initiative to adopt that ordinance was upheld in *San Diego Bldg. Contractors Assn v. City Council,* 13 Cal 3d 205, 118 Cal Rptr 146, 529 P2d 570 (1974).

[4] *Fasano v. Washington Co. Comm.,* supra; *Auckland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 536 P2d 444, Sup Ct *review denied* (1975).

[5] The leading case holding there is no constitutional right to notice and hearing before a legislative body adopts legislation is *Bi-Metallic Co. v. Colorado,* 239 US 441, 36 S Ct 141, 60 L Ed 372 (1915). The leading case extending the *Bi-Metallic* rule to action by the electorate in the specific context of zoning is *San Diego Bldg. Contractors Assn v. City Council,* supra, n 3. Other cases in accord and the minority of cases representing the contrary position are collected in Comment, *Zoning and the Use of Initiative,* 4 U Ill L Forum 693 (1975).

[ 575 ]

tion that would arise in the separate context of quasi-judicial land-use determination.[6]

## B

Statewide initiative and referendum were added to the Oregon Constitution in 1902. Local initiative and referendum were added in 1906 as Art IV, § 1(a).[7] In 1968, the 1902 and 1906 amendments were repealed and replaced by what is now Art IV, § 1, with Art IV, § 1(5) covering local initiative and referendum:

> "The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each munici-pality and district as to all local, special and municipal legislation of *every character in or for their municipality or district*. The manner of exercising those powers shall be provided by general laws * * *."

It is true that there are Oregon Supreme Court decisions holding the predecessor 1906 amendment was not "self-executing."[8] But we embark upon a difficult course when we attempt to reconcile all the early decisions interpreting and applying the 1906 amendment. For example, *Acme Dairy Co. v. Astoria,* 49 Or 520, 523, 90 P 153 (1907), states:

> "The [1906 constitutional] amendment * * * having expressly authorized cities and towns to provide for the manner of exercising the initiative and referendum pow-ers as to their municipal legislation, the provision *is*

---

[6]In *Forest City v. Eastlake,* 41 Ohio St 2d 187, 324 NE2d 740, 70 Ohio Op2d 384 (1975), the Ohio Supreme Court held that subjecting zoning decisions, that, in Oregon, we would call quasi-judicial, to referendum was unconstitutional. Certorari has been granted, 46 L Ed 2d 121 (October 14, 1975) (No. 74-1563), and that issue is now pending in the United States Supreme Court.

[7]The history of the adoption of the initiative and referendum amend-ments is described in G. Hedges, *Where the People Rule* (1914).

[8]Both the Supreme Court and this court have stated that the 1968 change was not a substantive change. *State v. Campbell/Campf/Collins,* 265 Or 82, 90, 506 P2d 163, *appeal dismissed* 414 US 803 (1973); *Lines v. City of Milwaukie,* 15 Or App 280, 284, n 1, 515 P2d 938 (1973), Sup Ct *review denied* (1974). Therefore, in discussing the present scope of Art IV, § 1(5), it seems appropriate to rely on the pre-1968 cases interpreting former Art IV, § 1(a).

therefore *self-executing* in respect to the class of enactments specified." (Emphasis supplied.)

While, *Kiernan v. Portland,* 57 Or 454, 459, 111 P 379, 112 P 402, 37 LRA (ns) 1051 (1910), states:

"In *Acme Dairy Co. v. Astoria* * * * we held this [constitutional] provision *not* to be *self-executing* * * *." (Emphasis supplied.)

Similar difficulties are encountered in analyzing the early cases involving the related home rule amendment, Art XI, § 2, that was also adopted in 1906.[9]

Nevertheless, looking at all the decisions, most are consistent with the following statements: (1) the statewide initiative and referendum amendment of 1902 is self-executing;[10] (2) the local initiative and referendum amendment of 1906 is self-executing as to cities;[11] and (3) the 1906 amendment is not self-executing as to other units of local government.[12]

Ultimately, however, our disagreement with the *Tatum* analysis comes down to the meaning of the term, "self-executing." *Tatum* suggests that this term means that nothing is a local matter subject to local initiative and referendum unless and until the legislature says so. While, to repeat, the cases are difficult to dissect, we think the term has actually been used in two different senses, neither of which is in accord with *Tatum.*

In one sense, "not self-executing" has been used to mean that there must be general legislation to prescribe the *manner* of exercising local initiative and referendum authority. Promptly after the adoption of the 1906 constitutional amendment the Legislative

_____

[9] *See* J. Ronchetto & W. Woodmansee, *Home Rule in Oregon,* 18 Or L Rev 216 (1939); R. Montague, *Law of Municipal Home Rule in Oregon,* 8 Cal L Rev 151 (1920).

[10] *State v. Langworthy,* 55 Or 303, 104 P 424, 106 P 336 (1909).

[11] *McBee v. Town of Springfield,* 58 Or 459, 114 P 637 (1911); *Acme Dairy Co. v. Astoria,* 49 Or 520, 90 P 153 (1907).

[12] *Barber v. Johnson,* 86 Or 390, 167 P 800, 167 P 1183 (1917); *Long v. City of Portland,* 53 Or 92, 98 P 149, 98 P 1111 (1909).

Assembly enacted "An Act to provide for carrying into effect the initiative and referendum powers reserved by the people in section 1 and section 1a of Article IV of the Constitution of the State of Oregon on general, local, special, and municipal legislation; to regulate elections thereunder * * *." General Laws of Oregon 1907, ch 226. This is now codified, with subsequent amendments, as ORS ch 254. So whether the 1906 constitutional amendment was self-executing or not in this sense is only of historical or academic interest, since the 1906 amendment has long since been "executed" by the 1907 legislation. *Kosydar v. Collins, County Clerk,* 201 Or 271, 270 P2d 132 (1954); *Campbell v. City of Eugene,* 116 Or 264, 270, 272, 240 P 418 (1925).

*Kosydar v. Collins, County Clerk,* supra, most clearly illustrates this point:

"* * * [The 1906 constitutional amendment] is not self-executing. By its precise terms, general laws prescribing the *manner* in which the powers reserved are to be exercised are required. *State ex rel. v. Portland Ry. L. & P. Co.,* 56 Or 32, 37, 107 P 958. But it is clear that the requirement for the adoption of general laws relates exclusively to the *procedure* or *manner* by which the powers are to be exercised, and has no reference whatever to the *substance* of the power itself.

"* * * * *

"From the foregoing brief review of the statutes [i.e., ORS ch 254] it is clear that ample provision is made for the manner in which the initiative and referendum powers may be exercised, not only in the state at large, but also in cities and towns, and in municipalities or districts, other than cities and towns, including counties * * *." (Emphasis theirs.) 201 Or at 281-82.

But *Tatum* does exactly what *Kosydar* rejected—requiring that there be legislative definition of the *substance* of the local initiative and referendum power.

However, there are other Oregon cases that use "not self-executing" in a different sense and that can

be read as lending some support to the *Tatum* position. An example is *Carriker v. Lake County,* 89 Or 240, 171 P 407, 173 P 573 (1918). The first sentence of the court's preliminary statement reads:

> "This suit involves the question of whether the voters of Lake County can, in the exercise of the initiative and without an enabling act, enact a law authorizing the County Court to levy taxes for the payment of bounties on jackrabbits." 89 Or at 240.

The court answered this question in the negative. Parts of the opinion indicate that the required "enabling act" was specific legislation authorizing an initiative on a jackrabbit bounty ordinance. Other parts of the opinion, particularly as clarified in an opinion denying rehearing, indicated that the required enabling act was authorization for any local enactment of such an ordinance, *either* by the county governing body *or* by the county voters: "* * * A county cannot enact a law unless the power to enact that law is referable to a grant of power made by * * * the legislature." 89 Or at 246. We read *Carriker* and related cases relied upon in the specially concurring opinion as standing only for the proposition that the local voters have no more or less legislative authority than the local governing body.[13] To the extent that the court used "not self-executing," 89 Or at 247, to express this concept, it was an unfortunate choice of terms.

Summarizing this aspect of the case, we hold: (1) Determination of whether and to what extent comprehensive plans and zoning ordinances are subject to initiative and referendum presents solely a question of interpreting and applying Art IV, § 1 of the Oregon Constitution; (2) the separate lines of cases on whether this constitutional provision is self-executing do not change the fact that we face a constitutional ques-

---

[13] *State ex rel. Pierce v. Slusher,* 119 Or 141, 248 P 358 (1926); *Zilesch v. Polk County,* 107 Or 659, 215 P 578 (1923); *Rose v. Port of Portland,* 82 Or 541, 162 P 498 (1917); *Patton v. Withycombe,* 81 Or 210, 159 P 78 (1916); *Kalich v. Knapp,* 73 Or 558, 142 P 594, 145 P 22, 1916E Ann Cas 1051 (1914); *Straw v. Harris* 54 Or 424, 103 P 777 (1909); *Kadderly v. Portland,* 44 Or 118, 74 P 710, 75 P 222 (1903).

tion;[14] and (3) the statutes discussed by the majority in *Tatum* are irrelevant. Stated differently, we hold that if ORS 215.130, upon which *Tatum* and today's specially concurring opinion are based, were repealed it would make no difference in the result. *Cf., State v. Hecker,* 109 Or 520, 544, 221 P 808 (1923) ("This statute may be entirely ignored, for the simple reason that it is nothing more than a repetition of the mandatory language of the organic law * * *.")

C

Alternatively, if the question of initiative and referendum on comprehensive plans and zoning ordinances for some reason requires resort to statutes, authorization exists to adopt and amend comprehensive plans and zoning ordinances by initiative and referendum to the extent they involve matters of local concern.

One statute is ORS 254.310:

"The people of every county are authorized to enact, amend or repeal all local laws for their county by the initiative and referendum process * * *."

The majority of this court now adopts the analysis of this statute stated in the specially concurring opinion in *Tatum.* 19 Or App at 779. We only add that, according to one commentator, this statute was enacted in 1919 with the specific intent of repudiating the Supreme Court's decision in *Carriker v. Lake County,* supra. O. Etter, *County Home Rule in Oregon,* 46 Or L Rev 251, 255 (1967).

Further statutory authorization, if necessary, can be found in ORS 203.035:

"(1) The governing body or the voters of a county may

---

[14] None of the cases dealing with whether the initiative and referendum provision of the constitution is self-executing or not has considered the possible impact of Art II, § 18, which provides in part:

"* * * [T]he words, 'the legislative assembly shall provide,' or any similar or equivalent words in this constitution or any amendment thereto, shall not be construed to grant to the legislative assembly any exclusive power of lawmaking nor in any way to limit the initiative and referendum powers reserved by the people."

by ordinance exercise authority within the county over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state, as fully as if each particular power comprised in that general authority were specifically listed in ORS 203.030 to 203.065.

"(2) The power granted by this section is in addition to other grants of power to counties, shall not be construed to limit or qualify any such grant and shall be liberally construed, to the end that counties have all powers over matters of county concern that it is possible for them to have under the Constitutions and laws of the United States and of this state."

ORS 203.035 (which became law via Oregon Laws 1973, ch 282) obliterates most distinctions between the powers of general law counties and home rule counties.[15] Home rule counties derive their legislative power from Art VI, § 10 of the Oregon Constitution and from their individual charters. Art VI, § 10 grants home rule counties authority "over matters of county concern." General law counties derive their legislative power from specific statutory grants and from the broad general statutory grant in ORS 203.035 of authority "over matters of county concern." General grants of power to counties convey exactly that broad grant articulated therein, except that which is preempted by state law. *Schmidt v. Masters,* 7 Or App 421, 429, 490 P2d 1029 (1971), Sup Ct *review denied* (1972). Therefore, in the absence of state preemption or a limiting charter provision, home rule and general law counties have the same legislative authority.

■ Under the Oregon initiative and referendum system, the citizens and the legislative body have the same legislative authority.[16] Given that the local legislative body has authority over matters of local concern, so does the local electorate.

---

[15] The legislative history of ORS 203.035 is discussed in 37 Op Att'y Gen 319 (Or 1974), 37 Op Att'y Gen 280 (Or 1974), 36 Op Att'y Gen 1115 (Or 1974), and 36 Op Att'y Gen 1070 (Or 1974).

[16] *See* cases cited in n 13, supra.

## D

■ Under both constitutional analysis and statutory analysis, whether comprehensive plans and zoning ordinances are subject to local initiative and referendum ultimately turns on the same question: whether the land-use law in question is of statewide or local concern.

The leading case in this field is *State ex rel Heinig v. Milwaukie,* 231 Or 473, 373 P2d 680 (1962). Because of its importance, we quote at length:

"* * * [W]e * * * hold that the legislative assembly does not have the authority to enact a law relating to city government even though it is of general applicability to all cities in the state unless the subject matter of the enactment is of general concern to the state as a whole, that is to say that it is a matter of more than local concern to each of the municipalities purported to be regulated by the enactment. Borrowing the language from *Branch v. Albee,* 71 Or 188, 193, 142 P 598, 599 (1914), we hold that the people of a city are not 'subject to the will of the legislature in the management of purely local municipal business in which the state at large is not interested, and which is not of any interest to any outside the local municipality.'

"An enactment is not of state-wide interest simply because the legislature decides that each of the cities in the state should be governed by the same law. In the appropriate case the need for uniformity in the operation of the law may be a sufficient basis for legislative preemption. But uniformity in itself is no virtue, and a municipality is entitled to shape its local law as it sees fit if there is no discernible pervading state interest involved.

"* * * * *

"* * * [W]e * * * hold that the manner of employing and discharging the personnel of a municipal fire department is a matter of local rather than state concern. To be sure, it could be shown that the manner of dealing with personnel of local fire departments may have some relation to the affairs of the state outside of the city boundary—in a sense all events in life are related—but the

question requiring our answer is whether the extramural effect is substantial or insignificant. 'The real test is not whether the state or the city has an interest in the matter, for usually they both have, but whether the state's interest or that of the city is paramount.'

"* * * * *

"* * * There can be no doubt that * * * the state has some 'concern' with the operation of local fire departments. However, the question is not simply whether the state has an interest in such operations, but whether it is substantial enough to predominate over the interest of the city.

"* * * It is not necessary to regard all of the activities of a municipal department as either local or state-wide; some of the activities may be predominantly local, whereas others may be predominantly state-wide. A statute standardizing fire hose couplings would very likely be held to be binding upon the various cities; whereas a statute standardizing the style of firemen's uniforms would not.

"* * * * *

"* * * The grant of sovereignty emanates from the same source, the people of the state. There is nothing in the manner of making the division of sovereignty which would suggest a constructional preference for state legislation. * * * Each case requires a weighing of the state's interest against the interest of the municipality * * *." (Footnotes omitted.) 231 Or at 479, 481, 484-85, 488.

Under *Heinig,* it is impossible to say that all of the matters appropriately covered by comprehensive plans and zoning ordinances are solely of predominantly statewide concern or solely of predominantly local concern. Such land-use controls apply to myriad and widely disparate situations, foreclosing an "either-or" approach to the question of statewide or local concern. "* * * It is not necessary to regard all of the activities of a municipal department as either local or statewide; some of the activities may be predominantly local, whereas others may be predominantly statewide." *State ex rel Heinig v. Milwaukie,* supra, 231 Or at 484-85.

[ 583 ]

For example, a county comprehensive plan or zoning ordinance might regulate the location of heavy industry on a major river[17] or the location of public sewer systems.[18] Under the *Heinig* analysis, such matters probably have sufficient ramifications beyond the local boundaries to be classified as matters of predominantly statewide concern. After all, Oregon has only one Willamette River, one coastline and one Cascade Range.

On the other hand, a comprehensive plan or zoning ordinance might regulate the minimum required setback or the maximum allowed height of a building. Absent some further evidence that we cannot now imagine, under the *Heinig* analysis, such matters probably will have so little impact beyond the local boundaries that they must be classified to be of predominantly local concern. *Heinig* tells us that the uniform to be worn by firemen is subject only to local control, 231 Or at 485; we fail to see how the maximum allowed height of the fire station is distinguishable. As we have said in a different context:

> "In general, Oregon statutes authorize county officials to formulate zoning ordinances *that meet their local needs. See,* ORS ch 215. However, the same statutes establish a basic outline and provide certain minimum standards with which each county zoning ordinance must comply * * *." (Emphasis supplied.) *Twin Rocks Watseco v. Sheets,* 15 Or App 445, 447, 516 P2d 472 (1973), Sup Ct *review denied* (1974).

■ In short, we conclude that the question of whether any given aspect of a comprehensive plan or zoning ordinance is a matter of predominantly statewide or predominantly local concern must be decided on a

---

[17] *Cf., Scott v. State Highway Commission,* 23 Or App 99, 541 P2d 516, Sup Ct *review denied* (1975).

[18] "* * * A sewage plant or other activity which would involve discharge reaching downstream out of the local governing body's jurisdiction would presumably be 'of statewide significance.' " N. Brown, *A Further Analysis of Judicial Review of Land Use Controls in Oregon,* 12 Will L J 45, 69 (1975). *See* ORS 197.400.

case-by-case basis, applying *Heinig* to the facts presented.

■ Once it is determined that the aspect of the plan or ordinance in question is of predominantly local concern, that would be the end of the inquiry. Art IV, § 1(5) guarantees the local electorate the right of initiative and referendum as to matters of predominantly local concern.

■ If, instead, it is determined that the aspect of the plan or ordinance in question is of predominantly statewide concern, substantial further analysis is required. Although alien to our prior experience, the finding of statewide concern would authorize the Legislative Assembly to make specific zoning decisions. To state it bluntly, the Legislative Assembly could designate specific land as suitable or not suitable for public (and perhaps private) sewer systems. And whatever the Legislative Assembly can do, the voters of the state can also do by way of statewide initiative and referendum.[19]

But there has been no attempt to make any legislative zoning decisions on a statewide basis. Instead, the Legislative Assembly has delegated its authority over statewide land-use concerns to the Land Conservation and Development Commission and to local governments.[20] This brings us to the most difficult aspect of the initiative and referendum question: When the Legislative Assembly has delegated authority over a matter of statewide concern to local governments, do the local voters have initiative and referendum power in the area of responsibility delegated to the local governing bodies?[21]

---

[19] *See* cases cited in n 13, supra.

[20] ORS chs 197, 215, 227; H. Macpherson & N. Paulus, *Senate Bill 100: The Oregon Land Conservation and Development Act,* 10 Will L J 414 (1974).

[21] Delegation of authority to local governments is discussed generally in *Warren v. Marion County,* 222 Or 307, 353 P2d 257 (1960), but no issue was raised in that case about statewide versus local concern, or about the constitutional right of initiative and referendum.

Oregon authorities are inconclusive. On the one hand, the numerous Oregon cases discussed in *Amalgamated Transit Union v. Yerkovich,* 24 Or App 221, 545 P2d 1401 (1976), stand generally for the proposition that local execution or implementation of previously enacted state law is administrative or executive in character and not subject to local initiative or referendum. Thus, it might be said that adoption or amendment of a comprehensive plan or zoning ordinance is merely implementation of state law, ORS ch 197, in those areas of predominant state concern. But this reasoning would probably come as a shock to property owners and local officials who have faced a variety of problems in the wake of *Baker v. City of Milwaukie,* 270 Or 500, 533 P2d 772 (1975), holding that comprehensive plans have the force of law and prevail over inconsistent zoning ordinance provisions.

A closer analogy, perhaps, is the "local option" approach to the sale of alcoholic beverages. Assuming for the sake of discussion that the control of liquor is a matter of predominantly statewide concern, *see* ORS chs 471-73, the legislature could make a single statewide rule on the subject. Or the legislature might delegate certain decisions about alcoholic beverages to cities and counties. Although distinguishable in some respects, *Fouts v. Hood River,* 46 Or 492, 504-05, 81 P 370, 1 LRA (ns) 483 (1905), comments:

> "* * * [T]here is nothing to prevent the adoption of a local or special law inhibiting the sale of intoxicating liquors within any precinct, county, ward or city in the State; and the fact that the present law may become operative locally, and not generally, is aptly in accord with the very spirit and letter of the constitution * * *."

On the facts in *Fouts,* liquor laws became "operative locally" based upon a local vote of the people.[22]

---

[22] Although the "local option" approach in the context of alcoholic beverages has, since 1952, been separately recognized in the constitution, Art I, § 39, that was not the case when *Fouts v. Hood River,* 46 Or 492, 81 P 370, 1 LRA (ns) 483 (1905), was decided in 1905. Present law on this subject is quite different. ORS 471.045, 472.040; *City of Coos Bay v. Eagles Lodge,* 179 Or 83, 95, 170 P2d 389 (1946).

Ultimately, however, we find the reasoning of a Texas case, *Glass v. Smith,* 150 Tex 632, 640-41, 244 SW2d 645 (1951), to be most persuasive:

"The legislative direction that [civil service] classification 'shall be provided by ordinance of the City Council', does not negate the right and power of the people to pass the classification ordinance. The legislature's use of the words 'City Council or legislative body' is simple of explanation. All legislative powers conferred by statute on municipalities in this state are conferred on the 'City Council' or 'City Commission'. It is to be doubted that there exists anywhere in our statutes a provision that a given legislative power of a municipality may be exercised 'by the people' or 'through the initiative'. If it were held that legislative powers could not be exercised by the people through the iniative [sic] in all cases in which the statutes provide that they shall be exercised by the 'City Council', the people would be shorn of all right to exercise any of the statutory powers conferred on municipal governments and the initiative would become an empty symbol * * *."

This language is particularly applicable to the present case. As a home rule county, Washington County has *constitutional* power over "matters of county concern." Art VI, § 10. If the legislature wants to delegate to Washington County *statutory* power or responsibility over a matter of statewide concern, we think it more reasonable that the right of local initiative and referendum apply to the delegated *statutory* power. *Glass v. Smith,* supra.

■ Therefore, the distinction between statewide and local concerns comes down to this: Local concerns regulated in comprehensive plans and zoning ordinances are subject to local initiative and referendum as a matter of constitutional law; it is less clear whether statewide concerns regulated in part by local comprehensive plans and zoning ordinances are subject to local initiative and referendum, but we think the better position is an affirmative answer. Of course, in the latter situation the people's law-making power is subject to the same standards, controls and limits as the

governing body's based upon the state delegation. And, given a matter of statewide concern, the delegation can be withdrawn from the local governing body and the local voters.

From the present record, it is impossible to tell whether the comprehensive plan amendment upon which plaintiff seeks a referendum is more a matter of state concern or local concern. We have the plan and the amendment, but no explanation of either. Apparently, the plan amendment seeks to allow some industrial development in rural areas where it was not permitted under the original plan. Depending upon the nature and location of the contemplated industrial development, there may be substantial state interests at stake. But under our analysis, it is not essential to decide whether state or local interests predominate; in either case the plan amendment is subject to local referendum.

## III

We hold, however, that a referendum cannot be limited to only the unincorporated part of Washington County. Art IV, § 1(5) applies to "each municipality and district." An early case interpreting this constitutional language, Schubel v. Olcott, 60 Or 503, 515, 120 P 375 (1912), stated: "* * * The word 'district,' as used in this section has a broader and more elastic significance than 'county,' and may designate a territory comprising more than a county, or containing a less area * * *." Subsequent decisions have established that "district" includes counties[23] and ports,[24] but not school districts.[25] While the distinction between a port and a school district is not immediately obvious, nevertheless, the common denominator that runs through most of the cases is that "district" means

---

[23] *State v. Mack,* 134 Or 67, 292 P 306 (1930); *Briggs v. Stevens,* 119 Or 138, 248 P 169 (1926).

[24] *State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916).

[25] *Hansell v. Douglass,* 234 Or 315, 380 P2d 977 (1963), *appeal dismissed* 375 US 396 (1964).

something that has been organized for, granted and exercises governmental powers.

Under this definition, the portion of Washington County that is not included within incorporated cities is not a "district" within the meaning of Art IV, § 1(5). Therefore, we agree with the trial court's disposition. But were it not for this last issue, we would reverse.

Affirmed.

**THORNTON, J.,** specially concurring.

I concur in the result reached in the prevailing opinion, but find myself in sharp disagreement with much of the reasoning by which the court arrives at that result. I particularly do not concur in the analysis of the decisions of our Supreme Court which is proffered in support of the conclusion that our previous decision in *Tatum v. Clackamas County,* 19 Or App 770, 529 P2d 393 (1974), was in error and must be overturned.

I

First of all, the court's interpretation of Art IV, § 1(5), Oregon Constitution,[1] is directly contra to what has been (with one possible exception) the settled law in this state since the landmark decision in *Rose v. Port of Portland,* 82 Or 541, 162 P 498 (1917).

Simply stated, the rule announced in *Rose* is this: The legal voters of districts such as port districts, school districts and similar districts, including counties, have no authority to exercise initiative and referendum powers without some additional grant of authority from the legislature.

---

[1] Oregon Constitution, Art IV, § 1(5) provides:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. * * *"

I believe that an analysis of the *Rose* case and the decisions of our Supreme Court which followed *Rose* will show that this rule has (with one possible exception) been consistently reaffirmed by our Supreme Court. *Barber v. Johnson,* 86 Or 390, 167 P 800, 1183 (1917); *Carriker v. Lake County,* 89 Or 240, 171 P 407, 173 P 573 (1918); *Hansell v. Douglass,* 234 Or 315, 380 P2d 977 (1963), *appeal dismissed* 375 US 396 (1964). These cases, which formed the basis of this court's decision in *Tatum v. Clackamas County,* supra, will now be discussed.

It is true that Art IV, § 1(5), Oregon Constitution, says that the referendum and initiative powers are reserved to the people; however, our Supreme Court in *Rose* and in a series of cases which followed has held that this constitutional provision is not self-executing, except as to "cities and towns."[2]

I begin my analysis with *Rose v. Port of Portland,* supra. The facts were that the Port of Portland adopted an ordinance giving itself initiative and referendum powers. The Port asserted that its action was fully authorized by what is now Art IV, § 1(5).

Our Supreme Court in denying that the Port possessed such powers said:

> "* * * *The Constitution enables the legal voters of cities and towns to enact or amend their charter, but does not permit the legal voters of any other municipality or district to enact or amend their charter or act of incorporation without outside legislative aid."* 82 Or at 558. (Emphasis supplied.)

Even before *Rose,* our Supreme Court held in *State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916), that any measure enacted by the people under Art IV, § 1a, Oregon Constitution, must be done so pursuant to

---

[2] It should be pointed out that the distinction drawn by the court between "cities and towns" on the one hand, and other municipalities and districts results from the provision in Art XI, § 2, Oregon Constitution, granting to the voters of "every city and town" power to adopt a charter.

[ 590 ]

some grant of legislative power, either by virtue of a charter or by statute. The court said:

> "* * * [M]unicipal legislation, within the meaning of Section 1a of Article IV, when applied to municipalities, other than cities and towns, refers to legislation which is permitted and made necessary for carrying into effect a lawful power previously granted. * * * *If it does not rise to the dignity of a city or town, a municipality cannot take unto itself and exercise any power whatever, unless the right is first granted by a law passed by the people of the whole state or by a general statute enacted by the legislature.* * * *" 79 Or at 23. (Emphasis supplied.)

In *Barber v. Johnson,* supra at 395, where the court was considering the power of the legal voters of a county to initiate a measure locating a county seat, the court said:

> "* * * [H]e who would uphold the action of the people of a county under the initiative must point to some grant of power to act on the subject in question * * *."

In *Carriker v. Lake County,* supra at 246, our Supreme Court was required to determine whether an initiative measure providing for a tax levy for bounties for jack rabbits passed by the people of the county at an election was valid. The court, in holding that the measure was not valid and referring to Art IV, § 1a, said:

> "* * * *A county cannot enact a law unless the power to enact that law is referable to a grant of power made by the people of the whole state or by their representatives, the legislature. Nor does it necessarily follow that a county can initiate and enact a local, special and municipal law without a charter merely because it can exercise the referendum without a charter granting it the power of exercising the referendum.* * * *" (Emphasis supplied.)

I mentioned earlier that there was one decision in which our Supreme Court may have departed from the rule announced in *Rose.* That decision is *Kosydar v. Collins, County Clerk,* 201 Or 271, 270 P2d 132 (1954).

In *Kosydar* the Supreme Court seemingly departed from the reasoning of *Rose, Barber* and *Carriker.*

*Kosydar* involved an election to remove a county seat. The election was held valid, even though the statutory authority for a popular vote on the question had been repealed.

The prevailing opinion in the case at bar seems to imply that *Kosydar* is authority for the proposition that implementing legislation is not required. I do not think, however, that the *Kosydar* court intended such a far-reaching result involving the overruling of *Rose, Barber* and *Carriker, sub silentio.* Furthermore, the *Kosydar* court in construing the ancestor statute[3] of ORS 254.310[4] said that the subject statute only provides the mechanics for exercising initiative and referendum powers granted elsewhere. The court said:

"It is evident that no powers were granted to the people by this statute [ORS 254.310] — the constitution had already reserved such powers to them — but the act did provide for the manner of exercising them. * * *" 201 Or at 279.

At any rate any doubt created by *Kosydar* was removed in 1963 when the court reaffirmed its adherence to the *Rose* rule in Hansell v. Douglass, supra.

In *Hansell* our Supreme Court was faced with the contention that school districts are "districts" under

[3] General Laws of Oregon 1919, ch 251, § 1, p 374, provides:

"The people of every county are hereby authorized to enact, amend or repeal all local laws for their county by initiative and referendum process. The method of procedure in the use by the people of any county of these powers is provided by sections 3470 to 3485 of Lord's Oregon laws, and amendments thereof, making effective the initiative and referendum powers reserved to the people by sections 1 and 1-a of article IV of the constitution."

[4] ORS 254.310 provides:

"The people of every county are authorized to enact, amend or repeal all local laws for their county by the initiative and referendum process. The procedure to be followed is provided by ORS 254.030, 254.042, 254.060, 254.070, 254.090 to 254.170, 254.320, 254.330 and 255.410 to 255.452, making effective the initiative and referendum powers reserved to the people by sections 1 and 1a, Article IV, Oregon Constitution * * *."

Art IV, § 1a, Oregon Constitution, and have the power to initiate legislation. The court had this to say:

"Prior to the decision in the *Rose* case this court had given conflicting decisions construing the meaning of Article IV, § 1a and its companion amendment of 1906, Article XI, § 2. The latter was the Home Rule Amendment. See *Burton v. Gibbons,* 1934, 148 Or 370, 36 P2d 786.

"The opinion in the *Rose* case decided that the two amendments must be construed together and then exhaustively analyzed the two amendments with unusual clarity and reason. *The conclusion was reached that the two amendments extended the initiative power only to those municipalities and districts that had the power to legislate; basically cities and towns.* The opinion said * * * 'no other corporate body can, without an enabling act, legislate power unto itself to legislate.' 82 Or at 573. The case held that the Port of Portland did not have the initiative power. A year later, in *Carriker v. Lake County,* 1918, 89 Or 240, 171 P 407, 173 P 573, Justice Harris, in even more emphatic language, applied the same rule to a county:

"'* * * '* * * *A county cannot enact a law unless the power to enact that law is referable to a grant of power made by the people of the whole state or by their representatives, the legislature.* * * * As pointed out in Rose v. Port of Portland, 82 Or 541, 553-558, 570 (162 Pac. 498), the words found in the two sections of the Constitution, when read together, define the extent of the power of the referendum and define and limit the power of the initiative.' 89 Or 245, 246, opinion on petition for rehearing.

"The same rule would apply equally, if not more so, to a school district. '*Although the municipality in Rose v. Port of Portland was a port and the municipality in the instant case is a county, nevertheless the legal principle involved is identical in both cases.*' *Carriker v. Lake County,* supra, 244." 234 Or at 317-18. (Emphasis supplied.)

The prevailing opinion in the present case relegates *Hansell* to a footnote, and does not refer to the explanation of the *Rose* rule which I have just quoted. Along

this same line, it is interesting to note here that a similar question involving the power of county voters to initiate legislation arose in Deschutes County (also a non-Home Rule county) in 1966. The voters of the county purported to adopt an antizoning "initiative measure" containing among others the following provision:

" ' "* * * All zoning ordinances or amendments to zoning ordinances will originate by petition from, and vote thereon by, the persons affected by such proposed ordinance or amendment as provided by law and not otherwise. * * * " ' " 33 Op Att'y Gen 481 (Or 1966-68).

When the validity of the above measure was questioned, the district attorney presented the issue to the Attorney General's office for decision. After an exhaustive examination of the Oregon authorities, including all of the decisions which have previously been referred to in this opinion, the Attorney General said:

"It is our opinion that under the doctrine of *Rose v. Port of Portland, Barber v. Johnson* and *Carriker v. Lake County,* supra, as reaffirmed in *Hansell v. Douglass,* supra, the people of Deschutes County had no authority to enact an initiative measure which would prohibit the county court from adopting zoning or subdivision ordinances, inasmuch as authority has not been granted by law for the enactment of such an initiative measure. * * *" 33 Op Att'y Gen at 485.

It is significant, I think, that the *Rose* rule has been followed by the Attorneys General of Oregon in the following published opinions:

27 Op Att'y Gen 66 (Or 1954-56) (The power of initiative and referendum held not available to a state representative district without implementing legislation authorizing the same).

31 Op Att'y Gen 240 (Or 1962-64) (Legislative district may not be subdistricted by the exercise of initiative power within the district).

33 Op Att'y Gen 481 (Or 1966-68) (Voters of a non-Home Rule county have no authority to enact an "anti-

zoning" initiative measure without state legislation authorizing the same).

33 Op Att'y Gen 644 (Or 1966-68) (An area described in a county zoning ordinance is not a "district" so as to render available to the voters thereof the power of initiative).

36 Op Att'y Gen 1044 (Or 1974) (A comprehensive plan adopted by the governing body of a county under ORS 215.050 is not subject to referral by the voters).

## II

I now turn to the remaining issues.

Plaintiff Allison's argument in support of his claimed right of referendum is as follows: the amendment to the comprehensive plan was adopted pursuant to authority granted the county by ORS 215.050, which provides:

> "The county governing body shall adopt and may from time to time revise a comprehensive plan and zoning, subdivision and other ordinances for the use of some or all of the land in the county. The plan and related ordinances may be adopted and revised part by part."

Plaintiff next points to ORS 215.130, which provides:

> "(1) Any *ordinance* adopted under ORS 215.010 to 215.190 * * * *shall be a local law* within the meaning of, and subject to, ORS 254.310 [section implementing referendums].
>
> "* * * * *." (Emphasis supplied.)

Since the amendment to the comprehensive plan was adopted pursuant to authority granted all counties by ORS 215.050, one of the statutes referred to in ORS 215.130, plaintiff concludes that the plan is a local law within the meaning of ORS 254.310 and subject to referendum.

I cannot agree with plaintiff's conclusion. Plaintiff is correct that ORS 215.130 provides that ordinances so adopted are local laws and subject to referendum. But he incorrectly assumes that comprehensive plans and the amendments thereto are ordinances. While it

[ 595 ]

is true that comprehensive plans may be enacted and amended by ordinance, the amendment in question here was adopted by resolution.

But the formal manner by which the amendment was enacted, however, is not the basis for my conclusion. I would hold that even if the amendment in question had been adopted by ordinance, it would not be a proper subject for a referendum. I say this because in the context of ORS 215.130 comprehensive plans and the amendments thereto are not ordinances. I recognize that comprehensive plans are legislative enactments, *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), and therefore arguably ordinances for most purposes.

My conclusion that comprehensive plans and the amendments thereto are not ordinances in this context is based on the proposition that there are fundamental conceptual differences between comprehensive plans and the related ordinances. The comprehensive plan which each county adopts is part of a broad policy-oriented program for orderly land development throughout the state, *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), and has been likened to a constitution. *Baker v. City of Milwaukie,* supra.

The related ordinances on the other hand represent the manner by which the goals embodied in the comprehensive plan are carried out in each county. *Fasano v. Washington Co. Comm.,* supra. They are subject to referendum. ORS 215.130.

The Oregon Supreme Court has recognized this essential difference between comprehensive plans and related ordinances in *Fasano,* 264 Or at 582.

Since there is such a vital difference between the manner of adopting comprehensive plans and the manner of enacting the related ordinances, and further because I find statutory authority authorizing only ordinances to be referred to the people, I conclude

that the amendment to the Washington County comprehensive plan is not a proper referendum issue. I note that the Attorney General reached essentially the same conclusion in an opinion on the identical question rendered to the District Attorney of Washington County in 1974. *See,* 36 Op Att'y Gen 1044 (Or 1974).

## III

There are two other aspects of the case before us on which I also differ with the approach taken in the prevailing opinion.

First, I am unable to agree with the rule announced in the prevailing opinion that henceforth the status of county land-use decisions made pursuant to ORS ch 215 — i.e., whether such decisions are to be classed as of local concern or of statewide concern — is to be determined on a case-by-case basis following the rules laid down in *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962).

Contrary to the above proposal, it is my view that because of the broad language of Senate Bill 100,[5] such county land-use decisions have now all become matters of paramount statewide concern.[6] *Accord: Fischer v. Miller,* 228 Or 54, 363 P2d 1109 (1961).

The rule announced in the prevailing opinion is not only inconsistent with the provisions of SB 100, it introduces a new and unnecessary complication into the process of governmental regulation of land use. This rule will inevitably lead to more uncertainty and more litigation. This whole process is already strangling from the effects of far too much of this type of governmentally imposed sanctions and red tape.

---

[5] Senate Bill 100, which was passed by the 1973 legislature and is now ORS ch 197, established the state Land Conservation and Development Commission and provided for statewide land-use planning.

[6] Whether or not the legislature has properly pre-empted the field by its determination in Senate Bill 100 that planning and zoning are matters of paramount state concern is, of course, ultimately a decision for the courts. *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962).

I would agree with the defendant county's argument that a comprehensive plan and amendments thereto are, by virtue of SB 100, a matter of statewide concern, and are not subject to a local referendum, except for one thing: ORS 215.130(1). Because of the provisions of this section, I cannot accept the argument that ordinances implementing the comprehensive plan are immune from referenda. In my view this statute is controlling on this issue.

ORS 215.130(1) provides:

"Any ordinance adopted under ORS 215.010 to 215.190 and 215.402 to 215.422 shall be a local law within the meaning of, and subject to, ORS 254.310."

An examination of the legislative history of this provision will show that the above language was part of the original county planning and zoning law enacted in 1947, Oregon Laws 1947, ch 537, § 5, p 948. Although the county zoning law has been amended many times, the above provision has remained unchanged down to the present time. This provision shows an unmistakable legislative intention to authorize the referendum as to all ordinances enacted under ORS ch 215.

The only manner in which I can conceive that SB 100 could be construed as showing a contrary legislative intention by repealing the plain terms of ORS 215.130(1) would be under a theory of repeal of this section by implication. Repeals by implication are not favored by the law. *Wampler v. Dept. of State Police*, 224 Or 439, 355 P2d 238 (1960). I do not believe that such a construction is authorized here. *See, Rorick v. Dalles City*, 140 Or 342, 12 P2d 762 (1932).

IV

Lastly, I agree with the prevailing opinion that plaintiff is not entitled to have his proposed referendum submitted only to the voters of Washington County residing outside incorporated cities. I believe there is another reason which should be stated.

[ 598 ]

As I have already pointed out, the voters of a county do not have the authority to invoke a referendum as to a comprehensive plan or an amendment thereof. However, even if plaintiff had been entitled to have his proposed referendum submitted, he would not have been able to limit the same to the voters residing outside incorporated areas. It is my conclusion that under ORS ch 215, only the governing body of the county has authority to submit a referendum to a portion of the county. I base this conclusion on ORS 215.110(4), which provides:

"The governing body may refer to the legal voters of the county for their approval or rejection an ordinance or amendments thereto for which subsection (3) of this section provides. If only a part of the county is affected, the ordinance or amendment may be referred to that part only."

Inasmuch as there is no similar authorization for a referendum vote by only part of a county contained in ORS 215.130 or elsewhere in ORS ch 215, I conclude that only the county governing body may so limit the scope of a referendum.