Argued February 26, affirmed March 12, rehearing denied July 2,
1918.

## CARRIKER v. LAKE COUNTY.*

(171 Pac. 407; 173 Pac. 573.)

**Statutes—Local Laws—Initiative—Powers of People of County.**

1. Article IV, Section 1a, of the Constitution, providing that the
initiative and referendum powers reserved to the people by the Con-
stitution are further reserved to the legal voters of every municipality
and district, as to all local, special and municipal legislation of every
character in and for their respective municipalites and districts, does
not confer on the voters of a county power to adopt a law, authoriz-
ing the County Court to levy taxes for the payment of bounties on
jackrabbits, in the absence of any enabling act passed by the legis-
lature, or by the people of the whole state granting such power to
the people of a county.

> [As to construction of initiative or referendum provision in
> Constitution, statute or municipal charter, see note in Ann. Cas.
> 1916B, 819.]

### ON PETITION FOR REHEARING.

**Constitutional Law—Self-executing Provisions—Initiative and Refer-
endum—Power of People of County.**

2. In the absence of an enabling act, the people of a county, as
distinguished from the people of a city or town, cannot initiate and
enact a local law; Article IV, Section 1, of the Constitution, provid-
ing that the initiative and referendum powers reserved to the people
are further reserved to the voters of every municipality and district,
as to local, special and municipal legislation therefor, not being self-
executing, as is Article IV, Section 1, making the reservation to the
people of the State, and being required to be construed with Article
XI, Section 2, giving power to cities and towns, as distinguished
from other municipalities, to make and amend their charters.

From Lake: L. F. CONN, Judge.

Department 1.    Statement by MR. JUSTICE HARRIS.

This suit involves the question of whether the voters
of Lake County can, in the exercise of the initiative
and without an enabling act, enact a law authorizing
the County Court to levy taxes for the payment of
bounties on jackrabbits.  A petition was signed by

---

*The constitutionality of initiative and referendum principle of
government is discussed in notes in 11 L. R. A. (N. S.) 1192; 33
L. R. A. (N. S.) 969.                          REPORTER.

more than 15 per cent of the legal voters residing in Lake County and filed with the Secretary of State on July 7, 1916, asking that a proposed measure providing for the levying of taxes for the payment of bounties on jackrabbits killed in Lake County, be submitted to the voters of that county at the regular biennial election to be held on November 7, 1916.    The title and first two sections of the measure read as follows:

"An act to authorize, empower and direct the county court of Lake County, Oregon, to provide for the payment of a bounty for the killing of jackrabbits in Lake County, Oregon, by the residents of said county; to levy a sufficient tax for the payment of such bounty and directing the payment of the same from the general fund of the county if such levy be not made; and to prescribe regulations for the manner of making the necessary proof of the number of rabbits killed and the rules under which such bounty shall be paid.

"Be it enacted by the people of the county of Lake, State of Oregon:

"Section 1.    That the county court of Lake County, Oregon, be, and it is hereby authorized, empowered and directed to order paid from the general fund of said county, or from a special fund created for that purpose by the said county court, the sum of five cents for each jackrabbit that may be killed within the boundaries of Lake County, Oregon, by residents of said county, from and after the taking effect of this act.

"Section 2.    It shall be the duty of said county court, at the regular term thereof for the purpose of levying taxes, to compute the estimated expenditure for the purpose of this act for the ensuing year, and to make a sufficient levy, either as a general county tax or a special 'Rabbit Bounty Tax,' to cover such estimate, provided, that should the amount so levied in any one year be insufficient to pay the earned bounty for that year, or should the said county court fail, neglect or refuse to make such levy, the bounty provided for in this act shall be paid from the general fund of the said county": See Chapter 4, Laws 1917.

89 Or.—16

The remaining sections relate to the manner of making proof of claims, and to the payment of bounties. The measure was submitted to the voters of Lake County pursuant to the petition. There were 1,049 votes for and 589 against the measure. On December 9, 1916, the County Court made a tax levy to meet the county expenses estimated for the ensuing year, including a tax "for jackrabbit bounty fund— four and eight-tenths mills." If all the taxes had been paid the levy made by the County Court would have produced the following amounts:

"For jackrabbit bounty................$45,217.27;
    For general school purposes............ 32,028.90;
    For general road purposes............. 27,803.31;
    For all county purposes including pay-
        ment of Lake County's portion of
        State Tax ........................79,130.22."

The county assessor extended the total levy, on the assessment-rolls, against all the taxable property in Lake County and the sheriff proceeded to attempt to collect all the taxes levied by the County Court, including the tax levied for the purpose of paying bounties on jackrabbits. The plaintiffs, who are taxpayers residing in Lake County, paid all their taxes except the rabbit bounty tax, and then brought this suit to enjoin the collection of the rabbit bounty tax. The trial court overruled a demurrer to the complaint. The defendants declined to plead further and a decree was entered canceling the jackrabbit bounty tax, and enjoining the county officers from collecting it. The defendants appealed.                    AFFIRMED.

For appellants there was a brief over the names of *Mr. T. S. McKinney,* District Attorney, *Mr. William S.*

*U'Ren* and *Mr. Arthur D. Hay,* with oral arguments by *Mr. McKinney* and *Mr. U'Ren.*

For respondents there was a brief with an oral argument by *Mr. W. Lair Thompson.*

HARRIS, J.—1. Article IX, Section 3, of the state Constitution provides that "no tax shall be levied except in pursuance of law." Unless the jackrabbit bounty tax was levied "in pursuance of law" it would contravene the Constitution and therefore would be invalid. There is no law authorizing the levy of the tax in question unless it can be said that the measure voted upon by the people of Lake County became a law when a majority of the voters by their ballots registered their approval of the measure on election day. The validity of the the measure depends upon whether the voters had power to enact it into a law for Lake County. No act has ever been passed by the legislature or by the people of the whole state granting unto the voters of a county the right to enact a jackrabbit bounty law for themselves. It is argued by the defendants that Article IV, Section 1a, of the state Constitution of itself, without the aid of an enabling act passed by the legislature or by the people of the whole state in the exercise of the initiative, grants to the people of a county the power to pass a law for their county. The instant case is controlled by *Rose* v. *Port of Portland,* 82 Or. 541, 556, 557 (162 Pac. 498), where we held that

"both sections (Art. IV, Section 1a, and Art. II, Section 2, of the state Constitution) recognize the necessity of a charter as the measure of the legislative power to be exercised by corporations and both sections contemplate that no local subdivision of government except cities and towns can appropriate legislative power unto itself"; and that "no subdivision of gov-

ernment like a port or district can exercise power unless that power is first granted by some lawmakers authorized to legislate that power to the municipality or district.''

Although the municipality in *Rose* v. *Port of Portland* was a port and the municipality in the instant case is a county, nevertheless the legal principle involved is identical in both cases. The opinion in *Rose* v. *Port of Portland* was the unanimous opinion of this court and represented the careful and deliberate judgment of all its members; and therefore for the reasons stated in that opinion and on the authority of that precedent and of *Barber* v. *Johnson,* 86 Or. 390 (167 Pac. 800), we hold that the voters of Lake County were without power to authorize the tax and that the jackrabbit bounty measure is void. The demurrer to the complaint was properly overruled and the decree is affirmed.                                    AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE MOORE concur.

---

Former opinion adhered to and rehearing denied July 2, 1918.

ON PETITION FOR REHEARING.

(173 Pac. 573.)

Department 1.

On petition for rehearing. Former opinion adhered to.                                    REHEARING DENIED.

*Mr. T. S. McKinney,* District Attorney, *Mr. William S. U'Ren* and *Mr. Arthur D. Hay,* for the petition.

*Mr. W. Lair Thompson, contra.*

HARRIS, J.—2. The defendants base their petition for a rehearing upon the contention that Article IV, Section 1a, of the State Constitution "is the grant of local legislative power and is itself the charter for all municipalities and districts." The contention that the Constitution is itself the charter for all municipalities and districts necessarily proceeds upon the assumption that the entire power to enact local, special and municipal legislation is, by force of Article IV, Section 1a, and Article XI, Section 2, subtracted from the whole sum of legislative power and set at large so that all municipalities and districts may whenever they choose and without further aid exercise some or all of such subtracted power. This contention is discussed at length by what is said in *Rose* v. *Port of Portland*, 82 Or. 541 (162 Pac. 498), and any further discussion of the question would only be a reiteration of what we have already said upon the subject. If Article IV, Section 1a, stood alone and by itself it might be construed to mean that every municipality and district could enact any local, special and municipal legislation; but this section of the Constitution does not stand alone. Article XI, Section 2, was submitted and adopted contemporaneously with the submission and adoption of Article IV, Section 1a. Each is a companion of the other. In obedience to a rule of construction recognized and applied everywhere this court has at all times and without a single dissenting voice read and construed these two sections of the Constitution together: *State* v. *Port of Astoria*, 79 Or. 1, 10 (154 Pac. 399); and when they are construed together the inevitable conclusion is that every municipality must have a charter and since cities and towns are the only municipalities which are granted the power to make their own charters it follows that a

county cannot make its own charter. A county cannot enact a law unless the power to enact that law is referable to a grant of power made by the people of the whole state or by their representatives, the legislature. Nor does it necessarily follow that a county can initiate and enact a local, special and municipal law without a charter merely because it can exercise the referendum without a charter granting it the power of exercising the referendum. As pointed out in *Rose* v. *Port of Portland,* 82 Or. 541, 553–558, 570 (162 Pac. 498), the words found in the two sections of the Constitution, when read together, define the extent of the power of the referendum and define and limit the power of the initiative.

Article IV, Section 1, of the Constitution reserves to the people of the whole state the power to enact and refer measures. The people of the state at large can initiate and enact laws without any other charter than the Constitution itself. Article IV, Section 1, is self-executing and therefore an enabling act is not necessary: *Stevens* v. *Benson,* 50 Or. 269 (91 Pac. 577); *Palmer* v. *Benson,* 50 Or. 277 (91 Pac. 579); *State* v. *Langworthy,* 55 Or. 303, 309 (104 Pac. 424, 106 Pac. 336). Our attention has been directed to the following sentence found in Article IV, Section 1a:

"The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts."

The suggestion is made that the language quoted from Section 1a reserves to the people of a county the power to exercise the initiative and referendum as to local, special and municipal legislation to the same extent as those powers are reserved to the people of

the entire state as to state-wide legislation. In other words, the suggestion made by defendants involves the idea that there are no more limitations upon the people of a county as to local, special and municipal legislation than there are upon the people of the whole state as to state-wide legislation and that therefore since no charter is needed by the people of the whole state no charter is needed by the people of a county. As stated in *Rose* v. *Port of Portland,* 82 Or. 541, 552 (162 Pac. 498):

"In the beginning, the whole sum of legislative power came from all the people and when they reclaimed the right to legislate they only returned to themselves what they had previously delegated to their representatives and hence no charter is needed to measure the right of the people to legislate, for it is a right which is unfettered except as the people themselves have limited it."

The power of the people of the state at large is measured by Article IV, Section 1; but the power of the people of a county is measured by Article IV, Section 1a, and Article XI, Section 2, and these two sections when read together require a charter. Moreover, Article IV, Section 1, is self-executing, but Article IV, Section 1a, is not self-executing as to counties: *Schubel* v. *Olcott,* 60 Or. 503, 508 (120 Pac. 375); *State* v. *Port of Astoria,* 79 Or. 1, 13 (154 Pac. 399). The construction which this court unanimously placed upon Article IV, Section 1a, and Article XI, Section 2, in *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498), is the only construction that can harmonize the two sections and at the same time give effect to the language of both sections. The petition for a rehearing is denied.            AFFIRMED.    REHEARING DENIED.

McBRIDE, C. J., BURNETT and MOORE, JJ., concur.