Argued and submitted December 4, 1979, affirmed February 26,
petition for rehearing denied March 25, 1980

REILLEY et al,
*Appellants,*

*v.*

SECRETARY OF STATE, et al,
*Respondents,*

CLACKAMAS COUNTY COMMISSIONERS, et al,
*Intervenors-Petitioners,*

(No. 107-021, CA 12311, SC 26433)

607 P2d 162

Scott H. Parker, Clackamas County Counsel, Oregon City, argued the cause for intervenors-petitioners. With him on the brief was Michael E. Judd, of Clackamas County Counsel, Oregon City.

John R. Faust, Jr., of Hardy, McEwen, Newman, Faust & Hanna, Portland, argued the cause for respondents Metropolitan Service District and Charles Kemper. On the brief was Janice M. Stewart, Portland. With her on the brief was E. Andrew Jordan, Portland, for respondents Columbia Regional Association of Governments and Denton Kent.

DENECKE, C. J.

Tongue, J., dissenting opinion.

Linde, J., did not participate in this decision.

**DENECKE, C. J.**

This is a declaratory judgment proceeding in which officers of Clackamas County intervened and asked for a judgment that chapter 665, Oregon Laws 1977 violates the Oregon Constitution. Chapter 665 proposed to the electorate of Clackamas, Multnomah and Washington counties sweeping changes in the organization of the Metropolitan Service District (MSD), a special service district created in 1970 to manage basic public services, such as sewers and public transportation, in the Portland metropolitan area.

The enabling legislation for MSD permitted the establishment of a metropolitan service district in any "metropolitan area," ORS 268.030, defined as the "Oregon portion of a standard metropolitan statistical area [SMSA] designated by an agency of the United States." ORS 268.020(2). By 1970 the Census Bureau had designated the Portland, Salem and Eugene areas as SMSAs. To date, however, MSD is the only metropolitan service district ever organized in this state.

Chapter 665 amended many sections of the enabling act, ORS ch 268, including the sections dealing with the powers of a distrtict and the selection of the governing body.[1] Most significantly for this litigation, ch 665 limited the applicability of ORS ch 268 to a statutorily defined land area within the boundaries of Clackamas, Multnomah and Washington counties.[2] The effect of the amendment was to preclude the formation of any additional metropolitan service districts in Oregon.

Section 31 of ch 665 provided for the referral of the entire act to the voters of the three counties for their

---

[1] For a summary of the provisions of ch 665 see the opinion of the court below, *Reilley v. Secretary of State,* 41 Or App 293, 298-300, 598 P2d 323 (1979).

[2] Ch 665, § 2 changed the definition of "metropolitan area" in ORS 268.020 from the Oregon portion of any SMSA to "that area which lies within the boundaries of Clackamas, Multnomah and Washington counties." Section 14 sets out "the boundaries of a metropolitan service district" as a legal description of an area within the perimeter of the three counties.

approval or rejection. In the referendum a majority of all the voters of the three-county area approved a ballot measure incorporating the Act. A majority in Clackamas County, however, voted no. The Governor declared that the Act had been approved by the voters. At a subsequent election the voters elected the governing board and executive director of the "new" MSD. The bulk of the Act took effect on January 1, 1979. Ch 665, § 30.

Two residents of Clackamas County filed this action in 1978, against various officials of the state, MSD, the Columbia Region Association of Governments and Clackamas County. By stipulation the Clackamas County officials were dismissed as defendants and permitted to intervene as plaintiffs. The circuit court granted summary judgment to the defendants on all issues. The Court of Appeals affirmed the judgment. *Reilley v. Secretary of State,* 41 Or App 293, 598 P2d 323 (1979). We allowed intervenors' petition for review.

At trial and before the Court of Appeals, the intervenors attacked the validity of ch 665 "from as many sides as they could think of." *Reilley, supra,* 41 Or App at 300. In this court, however, the intervenors devote all of their effort to one claim, their contention that ch 665 violates Article XI, § 2 of the Oregon Constitution, which provides:

> "Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon, and the exclusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the State of Oregon."

[576]

Specifically, intervenors contend that by rewriting the charter of MSD and by restricting the applicability of ORS ch 268 to Clackamas, Multnomah and Washington counties the legislature created a corporation by a special law.[3] The necessary premises underlying this argument are: (1) that the term "corporations," as used in Art XI, encompasses municipal corporations such as MSD; (2) that ch 665 is a "special law" of the type proscribed by Art XI; and (3) that the legislature, rather than the voters of the tri-county area, "created" the new MSD.

In order for intervenors to prevail all three of these propositions would have to be true. Defendants concede that MSD is an Art XI corporation, but contest the validity of the other premises on which intervenors rely.[4] The Court of Appeals assumed, without deciding, that MSD is an Art XI corporation, and that ch 665 is a special law. The court did not have to construe those terms, because it found authority for the procedure employed by the legislature in Art I, § 21 of the Oregon Constitution, which provides:

"No ex-post facto law, or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution; provided, that laws locating the Capitol of the State, locating County Seats, and submitting town, and corporate acts, *and other*

---

[3] The term "special law" appears in several sections of the Oregon Constitution. In *Straw v. Harris,* 54 Or 424, 432, 103 P 777 (1909), this court defined a special law as "one conferring upon certain individuals or citizens of a certain locality, rights and powers or liabilities not granted or imposed upon others similarly situated; * * *." In *Couch v. Marvin,* 67 Or 341, 345, 136 P 6 (1913), we said:

"* * * The words 'local,' 'special,' and 'municipal' legislation as used in the Constitution have a plain signification, and refer to enactments intended to affect certain persons only, or to operate in specified localities."

[4] Defendants raise an additional defense: that ch 665 did not create a corporation, because it merely amended the charter of one previously organized. We did not reach this argument, having disposed of the appeal on other grounds.

*local, and Special laws may take effect, or not, upon a vote of the electors interested."* (Emphasis added.)

The intervenors sharply attack the Court of Appeals' decision that Art I, § 21 "saves" the statute. However, we need not and do not decide that controversy as we conclude for a different reason that the legislature did not violate the prohibition of Art XI, § 2.

The first sentence of Art XI, § 2 states: "Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws." The history of that section supports our conclusion that the legislature did not "create" the new MSD, as that term is used in Art XI.

The current text of Art XI, § 2 derives from the original Oregon Constitution of 1859, the same section of which stated: "Corporations may be formed under general laws, but shall not be created by special laws, *except for municipal purposes."* (Emphasis added.) Pursuant to this section the legislature spent much of its time drafting city charters for Oregon municipalities,[5] which power the Constitution did not extend to the voters of those cities and towns. In 1906 the voters approved the so-called "home rule" amendments to the Oregon Constitution, one of which revised Art XI, § 2. The ballot title of the Art XI amendment reveals its purpose: "Constitutional amendment giving cities and towns exclusive power to enact and amend their charters."[6]

The first sentence of the current Art XI, § 2 has descended almost untouched from the version the vo-

_____

[5] In 1889, for instance, the legislature incorporated or amended the acts of incorporation for 33 Oregon towns and cities. 1889 Or Laws, Special Laws. The 1889 legislature produced 520 pages of special laws, most of which were devoted to the enactment or amendment of municipal charters, as compared with 144 pages of general laws. See also *LaGrande/Astoria v. PERB,* 284 Or 173, 182, n 7, 586 P2d 765 (1978).

[6] *Rose v. Port of Portland,* 82 Or 541, 562, 162 P 498 (1917).

ters approved in 1906.[7] Quite recently, in *LaGrande/ Astoria v. PERB,* 281 Or 137, 144-45, 576 P2d 1204, *aff'd on rehr,* 284 Or 173, 586 P2d 765 (1978), this court examined the intent behind the 1906 home rule amendments, as reflected in the public debate over them. We quoted an earlier case which summarized the purpose of the home rule amendments:

> "An examination of the public prints issued at that time discloses that the idea which was uppermost in the minds of all was to take from the legislature the power to make *a* charter for *a* city or town by a *special* law. The evil sought to be removed was the making of a single charter for a single city by a few men who agreed 'on the charter they wanted for the city.' * * *." *LaGrande/Astoria, supra,* 281 Or at 144, *quoting Rose v. Port of Portland,* 82 Or 541, 561, 162 P 498 (1917).

Nothing in the debate over the home rule amendments states specifically what meaning the sponsors attached to the phrase "created by the legislative assembly." The clause could be read to prohibit the legislature even from submitting to the people a proposal for the establishment of a municipal corporation. Alternatively, it could mean only that the legislature may not impose a new local government apparatus on a selected group of citizens, without giving those people a chance to approve or veto the proposal.

We think that the latter interpretation is more consistent with the intent of the home rule amendments. Granted, such an interpretation gives the legislature complete freedom to propose, although not to mandate, the formation of a new municipal corporation. But the voters of the locality are granted the final choice whether to create the corporation. So long as the legislative decision to enable a corporation to be established by legislation requires affirmative ratification

---

[7] The only amendment to Art XI, § 2 which has been approved since 1906 added the word "shall" to the first sentence of the section, as follows: "Corporations may be formed under general laws, but *shall* not be created by the Legislative Assembly by special laws."

by the affected voters, the home rule principle is secure.

The interpretation of Art XI, § 2 advocated by the intervenors would severely cramp the flexibility of the legislature in coping with problems that uniquely impact one area of the state. In ch 665 the legislature carefully delineated the boundaries of MSD to exclude the rural portions of the tri-county area. If Art XI, § 2 were read as intervenors suggest, the legislature could not directly set those boundaries. That task would have to be delegated by general enabling legislation to some board or commission. Similarly, legislation defining the responsibilities and powers of MSD would have to be enacted as general enabling legislation, overlooking the fact that the Portland metropolitan area faces problems unique to Oregon's largest city.

Of course, the legislature could find a way to indirectly address the needs of particular localities, e.g., by enacting general laws which empower a commission to charter municipal corporations. See, e.g., *Wasco County P.U.D. v. Kelly,* 171 Or 691, 700-01, 137 P2d 295 (1943). But we do not see what goal would be served by forcing the legislature to act by proxy.

The constraints that intervenors would impose on the legislature are especially onerous, in light of the fact that the Constitution recognizes no procedure by which the people of the tri-county area could create MSD on their own initiative. Art XI, § 2 permits the voters of every city and town to enact and amend their municipal charter.[8] Art VI, § 10 gives the voters of any county similar powers. But municipal corporations other than cities, towns and counties require a legislative charter. As we stated in *Rose, supra:*

"* * * The Constitution enables the legal voters of cities and towns to enact or amend their charter, but

---

[8] "The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

[580]

does not permit the legal voters of any other municipality or district to enact or amend their charter or act of incorporation without outside legislative aid." 82 Or at 558.[9]

We do not think that the intent of Art XI, § 2 is to hamstring legislative attempts to deal with regional problems which towns, cities and counties are ill-equipped to handle. We perceive a significant difference between the submission of a proposal to the voters, and the creation of a corporation by the legislature. For these reasons we hold that the requirements of Art XI, § 2 were satisfied by the provision in ch 665 for submission of the Act to the voters of the tri-county area.

In *LaGrande/Astoria v. PERB, supra,* 281 Or 137, 284 Or 173, the cities made no contention that the legislature had invalidly enacted special laws. The controversy concerned the second and third sentences of Art XI, § 2, not the first sentence concerning special laws. Writing in 1915 McBain inquired "* * * whether the requirement of general legislation for cities was devised to establish anything that might with propriety be called a home rule right." McBain, The Law and the Practice of Municipal Home Rule, p 96.

He answered his inquiry:

"* * * Indeed it is manifest at a glance that, even where the legislature fulfills a constitutional requirement of general legislation for cities not only as to the letter but also as to the full spirit of such requirement, there is imposed upon the law-makers no necessity whatever of granting to cities any considerable measure of home rule. The general law may

---

[9] Accord, *Carriker v. Lake County,* 89 Or 240, 243-44, 171 P 407, *aff'd upon rehr,* 89 Or 244, 173 P 573 (1918); *Wasco County P.U.D., supra,* 171 Or at 699. The latter case involved a claim that a public utility district could be created only by a vote of the people. We responded:

"* * * There is nothing in the constitution which grants to municipalities other than cities or towns the right to enact their own charter or act of incorporation. The power to create a corporation is still a legislative function, and the only inhibition upon the legislature in this respect is that it cannot create any corporation by a special law."

provide — and let it be remarked usually has provided — an elaborate and complete organization of municipal government. * * * But aside from a few details of this character a city may be put in a straight-jacket of general law that is very nearly if not quite as restrictive as any special charter could be." McBain, *supra,* at 96-97.

Affirmed.

**TONGUE, J.,** Dissenting.

The majority holds that although Article XI § 2 of the Oregon Constitution, as adopted by the voters of this state in 1906, expressly prohibits the legislature from "creating" municipal corporations by special law, and although the Oregon Constitution grants the power of "home rule" to both cities and counties, the legislature can nevertheless enact a special law to create a new municipal corporation called a "service district," with boundaries that include entire cities and parts of entire counties, and define its structure and powers in detail, including the power of taxation, despite the objections of the voters of some cities or counties within its boundaries; provided only that the new "service district" be approved by a majority of the voters within its boundaries.

I cannot subscribe to such a doctrine. Under the precedent now established by the majority, the legislature, at the urging of special interest groups, may now again embark upon ventures in municipal government by special laws. For example, if Eugene and Springfield, Coos Bay and North Bend, Medford and Ashland, or Salem and West Salem cannot agree upon proposals for the solution of problems of local concern ranging from mass transit and waste disposal to police or fire protection, the legislature may now enact a special law to create a "service district" with boundaries including both cities, and with powers that infringe upon the powers of both cities, including powers

of taxation. Under the decision by the majority, even though the voters of the smaller of the two cities involved may vote decisively against such a proposal, they would be forced to accede to powers of the new "service district," including the taxes levied by it, if the voters of the larger of the two cities vote in favor of the proposal.

For over 40 years prior to 1978 it had been held by unanimous decisions of this court that the state could not legislate, even by general laws, on matters primarily of local concern to cities, which were held to have exclusive control over such matters under their constitutional powers of home rule. In that year a majority of this court, in *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204 (1978), limited the home rule powers of cities to matters involving the structure and procedures of municipal government and held that the state can legislate by general law as to all matters of substance, including those primarily of local concern. See dissenting opinion in *LaGrande/Astoria.* Now the majority, by its decision in this case, has held that the state can also legislate on all such matters by special laws providing for "service districts," as well as by general laws.

To hold, as does the majority, that in such a situation the legislature has not "created" the "service district" in this case to me is pure sophistry. It often takes more than one to "create" in real life. The legislature conceived this "service district" and defined its structure, powers and boundaries. If this was a paternity suit the Oregon legislature would have no defense.